JAMES DOLAN, RESPONDENT, v. THE ÆTNA INSURANCE COMPANY, APPELLANT.

*Policy of fire insurance—when the question of the fraudulent intent of the assured should be left to the jury—when a verdict should not be set aside because the jury has had an unauthorized paper before it.*

This action was brought upon a policy issued by the defendant, insuring the plaintiff's barn, house, and the personal property, wearing apparel, &c., therein, against loss by fire. It contained a clause providing "that any fraud or attempt at fraud, on the part of the assured, shall cause a forfeiture of all claims under this policy." Upon the trial, it was shown that there was included in the proofs of loss a sealskin sacque, valued at $75, given by some person other than the plaintiff, to his unmarried daughter Mary, who was twenty-seven years old, but who had always resided with and been provided for by him. There was evidence to show that the agent of the

defendant the insurance company, with knowledge of the facts, had directed the daughter to appraise the sacque, and that it had thereafter been included in the proofs of loss.

*Held*, that it was for the jury to say whether or not the plaintiff inserted the sacque in the proofs of loss, with a willful intent to defraud the defendant, and that a verdict in the plaintiff's favor would not be disturbed.

*Held*, further, that neither the fact that the plaintiff stated in his proofs of loss that the damage to the building amounted to $1,017.64, while it had been estimated by the appraisers at $694, nor the fact that he had stated to the agent that the building was worth from $3,500 to $4,000, while it was, in fact, worth less than that amount, was conclusive evidence of an attempt to defraud the defendant, and that the question whether they were or not, was properly left to to the jury.

The constable having allowed the jurors, after they had retired, to come into the court-room, they, while there, found upon the floor and took back to the jury room with them, a memorandum of the items of damages, made by the plaintiff's attorney and used by him in summing up. The court, upon the jury subsequently applying to it for instructions, discovered that they had this memorandum, and, upon ascertaining how they had obtained it, took it from them, remarking that they had no right to it and must give no heed to it. The damages, as found by the jury, agreed with the directions contained in the charge of the court, in regard thereto.

*Held*, that a motion to set aside the verdict, based upon this irregularity, was properly denied. *Mitchell* v. *Carter*, 14 Hun, 448, distinguished.

APPEAL from a judgment in favor of the plaintiff, entered upon a verdict rendered at the Cayuga Circuit, and also from an order denying a motion for a new trial, made upon the minutes of the justice before whom the action was tried; also, from an order denying a motion to set aside the verdict for an alleged irregularity, in respect to the possession, by the jury, of a paper containing a statement of the items of damages.

The action was upon a policy of insurance issued by the defendant on July 15, 1876, insuring the plaintiff against loss by fire, on his house in Auburn for $2,500; on the personal property, wearing apparel, &c. therein, for $1,500; and on his barn, for $500.

A fire occurred on September 5, 1876, which partially consumed the house and personal property. Proofs of loss were presented on October 14, 1876. The jury rendered a verdict for $1,822.66. The defendant alleged that the fire was fraudulent and felonious, having been set by the plaintiff, or with his knowledge or connivance. And also that the plaintiff fraudulently misrepresented

the value of the house at the time the policy was procured. One Meaker was defendant's agent in Auburn, and had his place of business in the Auburn Savings Bank.

*Edwin Hicks* and *H. V. Howland*, for the appellant. The conduct of the jury on the trial, in obtaining the memoranda made by the plaintiffs counsel, was irregular, and their verdict should be set aside. (*Drew* v. *Andrews*, 8 Hun, 23 ; *Mitchell* v. *Carter*, 14 Id., 448 ; *Niel* v. *Abel*, 24 Wend., 185 ; *Hancock* v. *Salmon*, 8 Barb., 564, 566 ; *Watertown, &c.,* v. *Mix*, 51 N. Y., 561; *Schnapper* v. *Railroad Co.*, 55 Barb., 497; *Sanders* v. *Bowen*, 9 Hun, 153.) It is not necessary for a party to show prejudice, where such irregularity and misconduct has taken place. Men's minds will unconsciously be influenced by such statements, in writing, when put before them as jurors. (1 Hill, 211 ; 45 Barb., 98; 17 Mass., 218 ; 7 Com. L., 433 ; 29 Barb., 226 ; 51 Id., 346 ; 20 How. Pr., 384.) Dolan attempted, knowingly and fraudulently, in his proofs of loss, to obtain of the defendant, and to claim of them under oath, far more than his real damages and loss to his house, and for this reason his whole claim was forfeited. (Wood on Insurance, § 429, and cases there cited ; *Hickman* v. *Long I. Ins. Co.*, Edm. Sel. Cas., 374; *Wolf* v. *Goodhue F. Ins. Co.*, 43 Barb., 400 ; *Unger* v. *People's Ins. Co.*, 4 Daly, 96.) The evidence shows that the plaintiff must have set these incendiary fires himself, and that the verdict in his favor ought not to be sustained. (*Adsit* v. *Wilson*, 7 How. Pr., 64 ; *Clark* v. *Richards*, 3 E. D. Smith, 89 ; *Mumford* v. *Smith*, 1 Cai., 520 ; *Vance* v. *Philips*, 6 Hill, 433 ; *Jackson* v. *Sternberg*, 1 Cai., 162 ; *Cohen* v. *Dupont*, 1 Sandf., 260.)

*Frank D. Wright*, for the respondent. The court properly denied the motion to set aside the verdict on account of the jury having taken the memorandum. (*Lonsdale* v. *Brown*, 4 Wash. C. Ct., 148 ; *Rix* v. *Burdett*, 1 L. & R., 148 ; 21 Vermont, 515 ; 1 Graham & Waterman on New Trials, 47 ; *Anson* v. *Tinsley*, 19 Geo., 303 ; *Higgins* v. *Brown*, 12 Iu., 277 ; *Morris* v. *Howe*, 36 Iowa, 494 ; *Tracy* v. *Card*, 2 Ohio [N. S.], 431.)

HARDIN, J. :

The policy of insurance provides, viz. : "And any fraud or attempt at fraud, on the part of the assured, shall cause a forfeiture of all claims under this policy." The defendant insists that the plaintiff, in submitting proofs of loss, violated this provision of the policy, and therefore, ought not to recover. At the time of the fire, Mary Ann Dolan, a daughter of the plaintiff, was residing with him, and had continued so to do after she was twenty-one, as before, a member of his family ; he provided for her as for his other children, though she was twenty-seven years of age. Several articles used by her and provided for her wearing apparel, were named in the proofs of loss. Among them was a set of furs, valued at $75, which were given her by a person not a member of the plaintiff's family.

The trial judge instructed the jury. The plaintiff cannot recover for the sealskin sacque and furs, if the jury find that they were given to her "by some other person than her father." He submitted to the jury the question as to ownership of the other set of furs or sacque, and instructed the jury that the plaintiff "is only entitled to recover for such wearing apparel as was his." He also told the jury "that if the father had given it to her out and out, he had no title to it."

We think the ruling and instructions correct. But it is insisted that, by claiming, in the proofs of loss, these furs and other articles of wearing apparel, furnished by the father for the daughter, a forfeiture was caused of all claims under the policy. We cannot so hold as a matter of law. The question of fraudulent intent in regard to the proofs of loss were submitted very fully to the jury, and we ought not to disturb their finding in that regard. (Wood on Insurance, § 429, p. 744 ; *Wolf* v. *Goodhue Fire Insurance*, 43 Barb., 400.)

There was evidence that the sacque was appraised by Mary Ann a few days after the fire, by the direction of Mr. Stowell, the agent of the company, and also to the effect that he was then informed as to the circumstances attending the plaintiff's possession of it, and that it was given by some person to his daughter. This informa-

tion the defendant's agent had, at the time he told her to appraise it, which was prior to the formal·proofs.

It was for the jury to say whether there was any *willful intent* to defraud the defendant by inserting it, with the other articles appraised by the agent's direction, in the proofs of loss subsequently submitted to the *defendant*. The defendant insisted that the fire was caused by the knowledge, act, or procurement of the plaintiff. There is no direct proof to sustain this allegation. Circumstances and events are relied upon. It is said the house was over insured, and opinions of witnesses are introduced to establish that it was not worth more than $1,200 or $1,400.

The property was minutely described and all the facts relating to its age, its construction, its situation, were developed. The fact that for many years it had been insured for $2,000, and that this new policy was written for $2,500 ; that an estimate had just before been obtained as to the probable cost of changing it over, and that the house was set on fire in four places, and that kindling wood, or split boards were used to light the fire, and that three of the fires were set near plaintiff's sleeping-room, and many other circumstances tending to give rise to the suspicion that the plaintiff caused his house to be fired, were given in evidence. Standing uncontradicted, they tend to lead the mind to condemn the plaintiff as the guilty author of the fire. But he took the·stand and contradicted the principal allegation, by giving evidence to the effect that he did not cause or procure the fire to be set.

He had previously been examined before a sheriff's jury, and upon a former trial of this action. Upon this trial he did not remember some things he had previously stated, and he varied his evidence in some particular points, and contradicted some evidence given. by other witnesses. Under such circumstances, the trial judge submitted all·the evidence very cautiously and clearly to the jury, with.instructions to find for the defendant, if they believed the plaintiff caused the´house to be burned. They have found, upon a full consideration of the evidence, that he was not the author of the. fire. Though we might have come to a different conclusion upon the case after reading the evidence, we cannot now say that the trial judge erred in holding that a

fair question of fact was presented for the determination of the jury.

We do not see that the verdict is against the weight of the whole evidence upon the question involved, to such an extent as to justify our interference with the province of the jury. They are the judges upon conflicting evidence. We must adopt their result. (*Adsit* v. *Wilson*, 7 How. Pr., 64.) Although Stout and Springstead, the chosen appraisers, estimated, the day after the fire, the damages to the building at $694, and the assured, on October 14, 1876, submitted proofs of loss, in which he stated the damages at $1,017.64, we do not think it was error to submit to the jury, whether such proofs were fraudulent, or made with a willful intent to defraud the company. It was the opinion of the assured that his loss was greater than the estimate thereof made by the appraisers. The company knew of the appraisal, and it is difficult to see how any deception was intended upon the part of the assured.

Though, as a matter of law, as the trial judge properly held, he was bound by the appraisal, the claim may have been in the entire faith and honest belief that the damages were $1,017.64, instead of $694. The jury having found that there was no fraudulent and intentional over-valuation of the loss, we do not feel at liberty, under the evidence upon the question, to disturb their verdict. (Wood on Insurance, 429, § 220, and cases cited.)

There was evidence given tending to show that the assured represented the house to be worth $3,500 or $4,000. This was controverted, and the plaintiff claimed, as a witness, that he did not state its value over $2,500. The agent who wrote the policy had his place of business only a few streets from the insured property, and it is difficult to suppose he was free from negligence if he wrote the policy, without personal knowledge of its situation and value. But suppose that he did, then it was a question of fact upon the evidence for the jury to determine whether the assured, in stating the value of the house, was guilty of " an intentional and fraudulent over-valuation," or whether it was an honest error of judgment, or a mistake. (*Insurance Co.* v. *Weides*, 14 Wall., 375 ; *Franklin Ins. Co.* v. *Vaughan*, 92 U. S., 516.)

It is urged that the court committed a fatal error in receiving

the evidence of Vanderbasche, that he had made an estimate of the damages caused by the fire, and that the estimate was careful. To the proof of the amount of the estimate an objection was taken by the defendant, and the question was reserved. At a later stage of the case the evidence was again offered, and the court, upon the defendant's objection, excluded it, and ruled that the parties were bound by the agent's appraisal. It is now urged that where illegal evidence, properly excepted to, has been received during the trial, it must be shown that the verdict was not affected by it. If the evidence may have affected the verdict, the error cannot be disregarded. (*Erben* v. *Lorillard*, 19 N. Y., 299.)

Applying that rule to the rulings under review, we think no fatal error was committed. The amount of the estimate was excluded, and it therefore did not affect the verdict. The fact that an estimate had been carefully made by the witness could not affect the verdict. It did not affect the minds of the jury upon the question of damages, or any other question in the case. (*Williams* v. *Fitch*, 18 N. Y., 546; *Clark* v. *Crandall*, 3 Barb., 613.)

It is insisted that it was error to receive the evidence of Mary Ann Dolan, as to articles of personal property and their value. The objection was "that damages must be arrived at in the manner provided by the policy." That is the only ground of objection which can now be considered. (*Tooley* v. *Bacon*, 70 N. Y., 34.)

Soon after the fire Mr. Stowell, as agent of the company, proceeded to investigate the fire and ascertain the loss. The witness, Mary Ann, testified that "Mr. Stowell told her to appraise;" she then did so, with the aid of her mother. Certainly it was competent for the company to arrive at the damages in that mode, and after the estimate or appraisal was so made, it was competent for the plaintiff to give evidence thereof. It was not error to receive such appraisal in connection with the explanations given in connection with it.

It appeared by the evidence of Springstead, who was called by the defendant, that he and his partner pulled down the old house after the fire, and built a new one "a little larger and considerably higher than the old house." The defendant then asked, "Do you know what was the cost of that house." The

plaintiff objected, and the court sustained the objection. The knowledge of the witness upon that subject did not appear to be competent or material to any issue before the court. (*Gouge* v. *Roberts*, 53 N. Y., 619.)

It is now argued that the evidence should have been received upon the question of motive. If there was any view in which such evidence could be pertinent upon the question of motive, the attention of the trial judge should have been directed to it. We think the ruling was correct. When F. M. Smith was giving evidence of the estimate and appraisal made by him, he spoke of his estimate as containing missing goods, and he said "$6.57 would be the value of the goods that were missing, based upon what they showed me."

This was objected to, and the objection sustained, as we read the case. Then the plaintiff offered the appraisal, Exhibit M. This was objected to and received, and the defendant took an exception. The exhibit contained items for goods missing, $6.57, and we do not see any predicate for their recovery in the evidence.

To the extent of $6.57, we think the appraisal was erroneously received. We must, therefore, allow the defendant the benefit of this erroneous ruling, which we may do by requiring a stipulation that it (with interest upon it) be stricken from the damages. (*Birkbeck* v. *Burrows*, 2 Hall, 51.)

II. The appeal from the order refusing to set aside the verdict for irregularity, brings before us an inquiry as to what the effect was, or might possibly have been, made upon the minds of the jury, by a summary of the items of damages, which was obtained accidentally by the jury. It had been used by counsel for the plaintiff, in the course of his address to the jury, and apparently left by mistake on the table or floor, where he stood when addressing the jury. While they were retired, they were allowed by the constable, during the night and Sunday, to return to the court-room, and they picked up the summary. After they came in possession of it, they had occasion to go into court for instruction. While before the court, the judge discovered that they had the summary, and asked the jury where they obtained it. They explained, and he then took it from them, remarking to them

that they had no right to the paper, and they must give no heed to it.

They retired, and subsequently agreed upon their verdict. Under such circumstances, it is fair to presume they obeyed the instruction that was given them by the judge. But upon looking into the paper, we find nothing upon it that could, by any possibility, relate to any question in the case, except the one of damages, that was not the subject of contradicting evidence offered by the defendant; and under the proofs in the case, we have come to the conclusion that the amount of damages was clearly warranted by the evidence.

Our attention has been directed to our decision in *Mitchell* v. *Carter* (14 Hun, 448), where we sustained an order setting aside a verdict because the jury had the minutes of the trial judge. We think this case is unlike that in the important particulars we have stated, as we must presume that the jury obeyed the instructions of the trial judge to give no heed to the summary of the figures showing the amount for which the recovery should be had.

Besides the judge had instructed the jury, without exception, save as to the claim of $75 for the sacque, that the recovery should be for the sum which the jury gave. We ought, therefore, to apply the rule which requires us to disregard such irregularities as we can see did not influence the jury in reaching their verdict. (Code Civ. Pro., 1003.) We think the Special Term properly denied the motion based upon the alleged irregularity. These views lead us to reverse the judgment and orders, unless the plaintiff shall stipulate to strike out $6.57 and interest thereon, from the time when the loss became payable, in which case the judgment, as modified, will be, with the orders appealed from, affirmed.

Judgment and orders reversed, and a new trial ordered, with costs to abide the event, unless the plaintiff shall stipulate to deduct the sum of $6.57 and interest thereon, from December 14, 1876, in which case the judgment, as so modified, and the orders, are affirmed.

TALCOTT, P. J., and SMITH, J., concurred.

Ordered accordingly.