DANIEL C. EMERY *versus* PISCATAQUA F. & M. INS. CO.

By c. 34, § 2, of the Public Laws of 1861, an agent authorized by an insurance company to receive applications for insurance or payments of premium, or whose name shall be borne on the policy, shall be deemed the agent of said company in all matters of insurance; any application for insurance or valuation or description of the property, or of the *interest of the insured* therein, if drawn by said agent, shall be conclusive upon the company, but *not* upon the insured, although signed by him; all acts, proceedings and doings of such agent with the insured, shall be as binding upon the company as if done and performed by the person specially empowered or designated therefor by the contract.

By § 3, all statements of description or valuation in any *contract of insurance* or. *application* therefor, shall be deemed representations and not warranties. Any misrepresentation of the *title* or *interest* of the insured, unless the same is fraudulent, shall not prevent his recovering on the policy the amount of his insurable interest.

By § 5, all provisions contained in any policy or contract of insurance, in conflict with any of the provisions of this Act, are hereby declared void, and all contracts of insurance hereafter made, renewed or extended in this State or on property within this State, shall be subject to the provisions of this Act.

Where a policy of insurance, issued to the plaintiff by an agent since May 1, 1861, bore upon its face the name of such agent, and no written application was made, but the agent examined the premises and was fully informed of the state of the title of the insured; and one of the conditions of the policy, which, by its terms, was made a part thereof, was that "if the property to be insured be held in trust or on commission, or be a leasehold, or *other interest not absolute*, it must be so represented to the company, and *expressed* in the *policy*, in writing, *otherwise* the *insurance*, as to such property, *shall be void;* and the interest of the insured was in fact that of mortgagee, but that fact, or that his interest as such was to be insured, did not appear in the policy; — *Held,*

1. That, if there be an error in the description of the interest of the insured in the policy, it is imputable to the defendant's agent, and the policy is not void by reason thereof; and,

2. That, if there had been a misrepresentation as to the interest of the insured, it would not prevent a recovery to the full amount of the interest insurable, unless such misrepresentation was fraudulent.

Said chapter simply annuls the *provisions* at *variance* with its requirements, leaving the policy in all other respects in full force.

In the trial of an action upon the policy insuring a mortgagee's interest, the defendants will not be permitted to ask the mortgagee, when testifying as a witness, "what claims he had against the mortgager, at the time of the loss.

They may ask what claims he had against the mortgager *which* were *secured* by the *mortgage.*

ON EXCEPTIONS from *Nisi Prius*, DAVIS, J., presiding.

ASSUMPSIT, upon a policy of insurance against fire.

The verdict was for the plaintiff, and the defendants moved that it be set aside as being against the weight of evidence, and also on the ground of newly discovered testimony. But the view taken by the Court renders a report of the testimony useless.

The facts sufficiently appear in the opinion of the Court.

*Rand*, for the defendants.

*George B. Emery*, for the plaintiff.

The opinion of a majority of the Court was drawn by

APPLETON, C. J. — The plaintiff's title to the property insured, was acquired by a mortgage from Ira Winn to him, bearing date Dec. 1, 1860. The policy in suit was issued Oct. 5, 1861.

Whether we regard the proof adduced on the trial, or that upon which the motion to set aside the verdict on the ground of newly discovered evidence, rests, it is obvious that the mortgage of the plaintiff was not foreclosed and that the finding of the jury that the plaintiff's title had become absolute, was clearly against evidence.

A mortgagee has an insurable interest. But the fact that the plaintiff was mortgagee, and that his interest as such was to be insured, does not appear in the policy.

The third of the conditions of insurance, which by the terms of the policy is made part thereof, is in these words : " If the property to be insured, be held in trust, or on commission, or other interest not absolute, it must be represented to the company and expressed in the policy in writing ; otherwise the insurance, as to such property, shall be void."

It is insisted, as the plaintiff was insured as the absolute owner of the property at risk, when he was only the mortgagee of the same, that therefore the policy is void.

A misrepresentation by the applicant for insurance, as to his interest in the property to be insured, as when, being mortgagee, he is insured as the owner of the fee, has been held to avoid the policy. *Battles* v. *York County M. F. Ins. Co.*, 41 Maine, 208. So, a policy issued under the condition that it shall be null in case of subsequent insurance, without the written consent of the insurers, has been held void, when a subsequent insurance has been obtained without such consent in writing. *Hale* v. *Mechanics' M. F. Ins. Co.*, 6 Gray, 169.

These, and many similar decisions, are made to depend upon the peculiar language of the polices then under consideration. To avoid their effect, the Act of 1861, c. 34, entitled "an Act in relation to Fire and Marine Insurance Companies and actions on contracts of insurance," was passed. The present policy is subsequent to the passage of the Act referred to, and is subject to its provisions.

By the Act of March 15, 1861, c. 34, § 2, "an agent authorized by an insurance company to receive applications for insurance, or payments of premium, *or whose name shall be borne on the policy*, shall be deemed the agent of the company in all matters of insurance ; any notice required to be given to said company or any of its officers, by the insured, may be given to such agent ; any application for insurance or valuation, or description of the property, *or of the interest* of the insured therein, if drawn by said agent shall be *conclusive* upon the company, but *not* upon the insured, although signed by him," &c.

The policy in suit bears upon its face the name of John E. Dow, as agent. It was issued by him as such agent. No interrogatories were proposed and no written application for an insurance was made. The defendants' agent, according to the uncontradicted testimony of the plaintiff, was fully cognizant of the state of his title, and, if there is error in the description of his interest in the policy, it would seem to be justly imputable to such agent, all whose acts, it is provided, "shall be as binding upon the company as if done

and performed by the person specially empowered and designated therefor by the contract."

A mistake, such as occurred in the present case, if the misdescription of the plaintiff's interest arose from the neglect of the defendants' agent, would be corrected by a court of chancery, and the insurers would be held responsible. Where a mortgagee applied for insurance, through an agent of the insurance company, intending to effect an insurance of his interest as mortgagee, and so stated to the agent, but the agent drew the application as for an insurance on the property itself, in the name of the mortgager, and as his property, the amount to be payable in case of loss to the mortgagee, and so made the application and had the policy so made, in the belief that this was the proper legal mode of effecting insurance on the mortgagee's interest, it was held that such mistake could be corrected by a court of chancery. *Woodbury Savings Bank* v. *Charter Oak Ins. Co.*, 31 Conn., 517. And this notwithstanding the insured had failed in a suit at law upon the same policy. S. C., 29 Conn., 374. In equity, the Court held there was a mutual mistake as to the proper mode of filling out the insurance, and decreed the correction of such mistake.

By § 3, "all statements of description or valuation *in any contract for insurance or application* therefor, shall be deemed representations and not warranties. * * Any misrepresentation of the *title* or *interest* of the insured, unless the same is fraudulent, shall not *prevent* his recovering on the policy the amount of his *insurable* interest."

In this case, there is no proof of any misrepresentation of the plaintiff's interest, but, if he is to be believed, it was fully disclosed to the agent of the defendants. Had there been a misrepresentation as to the interest of the insured, it is specially provided that it shall not prevent a recovery to the full amount of the interest insurable, unless such misrepresentation is fraudulent. Warranties on these points — the valuation and interest of the insured — are to be treated as representations and nothing more.

By § 4, "no insurance company shall *avoid* payment of a loss, by reason of incorrect statements of value or erroneous description by the insured, in the *contract of insurance, if the jury shall find the difference between the property as described and as really existing*, did not contribute to the loss or materially increase the risk," &c.

The policy bears date since the passage of the Act referred to. By § 5, of the same, it is provided that, "all provisions contained in any policy or a contract of insurance, *in conflict with the provisions of this Act,* are hereby declared *null and void,* and all contracts of insurance hereafter made, renewed or extended, in this State, *shall be subject to the provisions* of this Act."

The policy in suit, if enforced according to its terms, is directly in conflict with the statute to which we have referred. But the statute is imperative and must control. The contract is and must be subject to its provisions.

" *Jus publicum privatorum pactis mutari non potest,*" says Papinian. The contracts of private persons cannot alter a rule established on grounds of public policy. The Legislature have deemed it wise to impose restrictions upon the general liberty of contracting which the law accords to parties. Parties cannot by their contracts avoid the obligations of a statute, or be bound by agreements contrary to its mandates.

The statute, it is to be observed, does not annul a policy having provisions at variance with its requirements. It simply annuls and renders void those provisions. It leaves the policy in all other respects in full force. The Act is to be regarded as included in, and a part of policies, issued since its passage. Nor is this any hardship upon parties, for all are deemed to have contracted with a knowledge of its existence and subject to its provisions.

Similar or analogous legislation is to be found in other statutes. In the usury law, all interest is illegal beyond the statute rate, yet, subject to that modification, the contract is enforced.

Both parties intended a contract of insurance. They intended or should have intended that it should be a valid one and in accordance with the statutes of the State. To such a contract we give force and effect, eliminating therefrom any provisions at variance with the will of the Legislature as expressed in its enactments. Upon any other construction, the statute becomes inoperative.

It follows, therefore, that the defendants cannot escape the performance of their contracts by reason of a misdescription of the plaintiff's interest, unless the same was material and fraudulent on his part. Assuredly they should not, if it arose from the fault of their agent.

The point that this misdescription was material and fraudulent within the statute, was not taken. The jury were not asked to pass upon it, nor was the Court requested to give any instructions in relation thereto, nor does the evidence as reported afford any indications that the result would have been changed, had instruction relating thereto been given.

The exception, that the question as to what claims the plaintiff had against Winn, was not permitted to be answered, is not well taken. If the inquiry had been what claims he had which were secured by the mortgage, it might have been material. But the question was not thus limited, and was therefore properly excluded.

*Exceptions overruled.*

CUTTING, KENT, DICKERSON, BARROWS and DANFORTH, JJ., concurred.

Dissenting opinion by

DAVIS, J. — The defendants made a policy of insurance, Oct. 5, 1861, upon certain buildings and machinery, the whole being personal property. The plaintiff made no written application therefor; but the contract was with him as the owner of the property.

In order to show that he had an insurable interest, the plaintiff, at the trial, introduced in evidence a mortgage to himself, from Ira Winn, dated Dec. 1, 1860, given to se-

cure certain liabilities under a written contract of the same date. And he testified that he took possession of the property, for a breach of the condition in the mortgage, June 14, 1861; and that he and Winn, on the same day, terminated the contract, by an agreement written upon the back of it, signed by them both.

The plaintiff Emery, had been notified to produce the contract secured by the mortgage, at the trial. This he declined to do. But, in the trial of another cause, in which he was not a party, on a subsequent day, he was called as a witness, and was compelled to produce the contract by a *subpœna duces tecum.* The same counsel being employed by the defendants in both cases, the contents of the written indorsements upon the back of the contract then became known to him. He thereupon filed a motion for a new trial in the case at bar, on the ground that he had discovered new evidence material to the issue.

The indorsements on the contract were as follows : —

"Portland, June 15, 1861. — This agreement, so far as services and the salary of the within named Daniel C. Emery is concerned, is this day terminated by mutual consent, leaving the amount due Emery to this date, on which interest is to be paid, $3,744,79, not including liabilities for indorsing notes.     "Daniel C. Emery,
                            "Ira Winn."

"Portland, Jan. 1, 1863. — The liabilities of the within named Emery having been ascertained, the amount now due said Emery on the written contract is four thousand eighty-two dollars and eighty-one cents, (4,082,81) and the within contract is finally terminated by mutual consent.
                            "Daniel C. Emery,
                            "Ira Winn."

The contract provided for services and loans by Emery, and payment therefor by Winn upon its termination, either party having the right to terminate it, after giving to the other three months notice. The termination of the *contract,* therefore, could not affect the *mortgage,* until the amount

due Emery was paid. As the property was valued at a much larger sum than the amount due Emery, if he had taken it, it would have operated as a payment. Any recognition of it as still due and unpaid, was evidence, therefore, that the breach of the condition had been waived, and that the mortgage was still subsisting.

If it was essential for Emery to prove that he was *absolute owner* of the property, the indorsements upon the contract were important evidence for the defendants. They tended to show that the mortgage was treated by the parties, not as having been paid, but as still in force; that Winn's right to pay the amount due, and redeem the property, was still recognized; and that the amount thus remaining due from him, he still owning the property, subject to the mortgage, was agreed upon by the parties as late as Jan. 1, 1863.

It is not pretended that the defendants, or their counsel, had any knowledge of these facts, until after the trial. The plaintiff refused to produce the contract, though requested and notified to do so. The affidavit of their counsel was admitted without objection; and all the circumstances in the case show that the defendants could not have had any knowledge on the subject.

The newly discovered evidence was material, if it was necessary for Emery, in order to recover, to prove that he was *absolute owner* of the property, when he procured his policy of insurance.

By the third condition of his policy it is provided, that, "if the property to be insured be held in trust, or on commission, or be a leasehold or other interest *not absolute*, it must be so represented to the company, *and expressed in the policy in writing;* otherwise the insurance, as to such property, shall be void."

If the mortgage was still in force, and the breach of the condition had been *waived* by Emery, then his title was not *absolute* but *contingent.* It was liable to be defeated by the payment of the amount due. Not being so "expressed in the policy, in writing," the insurance was void by the terms

of the contract, unless it was made valid by the statute of 1861. *Day* v. *Charter Oak F. M. Ins. Co.*, 51 Maine, 91.

Prior to that time, an erroneous description of the property, in any matter material to the risk, or if such description was a warranty, rendered the policy void. *Battles* v. *Insurance Co.*, 41 Maine, 208. And, if the mistake related to a *part* of the property, the *whole policy* was void. *Lovejoy* v. *Augusta Ins. Co.*, 45 Maine, 472. This resulted from general principles, without any condition in the policy to that effect. Such a *mistake* avoided the policy *by its own force.*

One design of the statute of 1861 was to avoid such a result. And there can be no doubt that it is effective to this end. Such a mistake in describing the property no longer, of *itself*, will render the insurance void.

But there had been before, as there have since, contracts of insurance in which the parties *expressly stipulate* that such a mistake shall render the policy void. In such a case, though a material mistake will not, of *itself*, make the insurance void, will not the insertion of the *stipulation* have that effect? If the insured represents himself as the "absolute owner" of the property, and it is insured on *that condition*, with an express agreement that, if he is not, the policy shall be void, are the insurers, if the property is mortgaged, bound to a contract *they have never made?*

The fifth section of the statute provides that "all provisions contained in any policy or contract of insurance, in conflict with any of the provisions of this Act, are hereby declared null and void."

It will be observed that the statute does not, in such a case, declare the entire contract void, — but only *certain parts* of it. What effect will this have on the rest? When a *part* of a contract, by reason of a statute, is void, can *any* of it be enforced? This question has often been raised in suits at law, and is clearly settled.

When some of the stipulations in a contract are void, either at common law, or by statute, and there are other

distinct and *independent* stipulations, capable of being separated from those which are void, the latter are valid and obligatory, and may be enforced. Chitty's Con., 693, 694; *Leavitt* v. *Blatchford*, 5 Barb. Sup. Ct., 9; *Leavitt* v. *Palmer*, (S. C.,) 3 Comst., 19.

But if the contract is single, and there is not any valid part *independent* of that which is void, and capable of separation from it, then, being void in part, *the whole* is void. Chitty's Con., 693; *Filson's Trustees* v. *Himes*, 5 Barr., 452.

Thus, a usurious promissory note is valid, by our present statute, though the promise to pay the illegal interest is void. For the promise to pay the principal is separable from that to pay the interest, and is in no sense dependent upon it.

But, if one makes a *parol* contract to sell land and also personal property, for one price for *both*, the whole is void; for the agreement to sell the *personal* property cannot be separated from the other. *Cooke* v. *Toombs*, 3 Anst., 420; Sugd. Vend., 78. So when a part of any contract is void by the statute of frauds, the other part, unless it is entirely *distinct*, cannot be enforced; and *the whole* is void. *Loomis* v. *Newhall*, 15 Pick., 159; *Van Alstine* v. *Wimple*, 5 Cow., 162.

In the case at bar, the provision which is void, instead of being distinct and separable from the others, is the very foundation of them. It is the condition on which alone the others are to be binding. Without it, the parties never agreed upon anything. Unless the plaintiff was the absolute owner of the property, the company never promised to insure it. It was only property of which he *was such owner* that they undertook to insure. Therefore, if the condition is void, it leaves the parties without any contract. Their minds never met, nor assented to any other. The Legislature have no power to hold parties to stipulations *to which they never agreed*, — though it may make void those to which they *have agreed;* and we should not presume that anything of the kind was intended.

The great design of the statute is to prevent certain mistakes, or misdescriptions, from making polices void, *of their own force.* If the parties see fit to make a *special contract* that if the property, or the title, is not such as is represented, upon the faith of which the insurance is made, then the policy shall be void, they have a right to do so.

For the statute contains no prohibition. Like the statute of frauds, it simply provides that certain agreements shall be void. They are not made void as a *penal offence.* They were not *mala in se* before. They are not *mala prohibita* now. No question, therefore, can arise whether the parties are *in pari delicto;* for neither is in any wrong. They both enter into a contract, one provision of which, by the statute, is void; and this is so connected with the rest that *the whole* is void. The law leaves the parties as they stood before. In doing so, it does equal justice to *both.* It is often very important for insurers to know whether the insured has an *absolute* title to the property, or only a contingent or *conditional* one. The company agreed to insure if the plaintiff was the absolute owner; otherwise not. He represented himself to be so, and so made his contract. If he was not, he has no reason to complain.

The newly discovered evidence being material, and having been concealed from the defendants by the plaintiff, so that it did not come to their knowledge until after the trial, the verdict ought to be set aside, and a new trial granted.

WALTON, J., concurred.