## FRANKLIN FIRE INSURANCE COMPANY v. VAUGHAN.

A. having bought goods at an auction-store, and made part payment therefor, and having the disposal of them, permitted them to remain there for sale by and under his direction. He agreed that the first proceeds of the sale, to the amount of $3,150, should be paid to the vendor; and that the auctioneers, if they advanced money upon the goods, should retain the possession and control thereof as security. No advance was made. A. procured an insurance upon the goods for $2,500, representing that no other person was interested therein; that they were unincumbered; and that he estimated their value to be $12,000. Part of the goods were sold; and, the remainder having been destroyed by fire, A. brought suit against the company for the amount of the policy. The company set up by way of defence, that his statement as to the freedom of the goods from incumbrance was untrue; that he, knowing of its rule not to insure goods at more than three-fourths of their value, had overvalued them; and that they were, in fact, worth but $6,000. The jury found that the value of the goods destroyed was $7,204. *Held*, that the facts of the case do not justify the claim that the property was incumbered, or that the title of the insured therein was not absolute. *Held further*, that, as nothing appeared at the trial to show that the estimate of the value of the goods by A. was not an honest one, the charge of the court below, that such valuation, if made in good faith, and without intention to mislead or defraud the company, would not defeat a recovery, was without error.

ERROR to the Circuit Court of the United States for the Eastern District of Arkansas.

*Mr. U. M. Rose* for the plaintiff in error.

*Mr. Albert Pike, contra.*

MR. JUSTICE HUNT delivered the opinion of the court.

In seeking to recover the amount insured upon his goods

destroyed by fire, the insured was bound to prove only his policy, his loss, and the service of preliminary proofs. This proof he made.

The insurance was for $2,500. The jury found the value of the goods destroyed by fire to be $7,204.

Defence is made on the ground of a violation of that condition of the policy which provides, that, "if the interest of the assured in the property is not absolute, it must be so expressed in the policy, otherwise the insurance shall be void," and of a misstatement in answering that there was no incumbrance on the property insured.

The insured had bought the goods of one Flowers. They were in the store of Harris & Co., auctioneers, at the time of the purchase, and were left there for sale by and under the direction of Vaughan, the purchaser. It was agreed by him that the first proceeds of the sale should be paid to the vendor to the amount of $3,150; and, if the auctioneers advanced money upon the stock, they were authorized to retain the possession and control of the goods as their security. There is no evidence or claim that any such advance was made.

We see nothing in the writing produced to justify the claim that the property insured was incumbered, or that any person other than the vendee had any interest in it, or that the title of the insured was not absolute. The property was sold to the insured in April, 1873; and the evidence showed, that, when so sold, it was in the auction store of Harris & Co. for sale. The goods remaining there, the purchaser took possession and proceeded to make sale of them, as was also proved on the trial. The writing produced contains no limitation of Vaughan's title, and expresses no right of possession or control in any person other than himself, except in the event that Harris & Co. should make advances. The paper stipulated that Harris & Co. might hold the possession and control of the goods as security for their advances. There was no such stipulation in favor of the vendor. He did not profess to retain any right in the goods, or any control over their possession. So far as he was concerned, Vaughan had the full power of disposition. His claim was upon the money realized from the sales. To bring his claim into enjoyment, it was necessary that sales should

first be made, and Vaughan, and Harris & Co. as the agents of Vaughan, were intrusted with this duty. The goods were, and the proceeds of the goods when sold would be, the property of Vaughan. His agreement as to the proceeds did not affect his title or estate. While it is possible, that, in the event of a fraudulent combination to defraud him, Flowers might have invoked the aid of a court of equity in securing the proceeds of the sales, there is nothing to affect the present title of his vendee. It may be likened to the familiar case of an insurance upon a house in the name of the mortgagor, which he promises to hold for the benefit of the mortgagee. While, under certain circumstances, equity would interfere in behalf of the mortgagee, it can scarcely be doubted, that, until the occurrence of such circumstances, the mortgagor is the owner of the policy and its fruits.

A defence was also sought to be made on the ground of the over-valuation of the goods by Vaughan when he obtained the insurance. The policy was preceded by an application in this form: —

"Application of James L. Vaughan for insurance, &c., in the sum of $6,000, on the property specified; the value of the property being estimated by the applicant.

| Valuation. | Sum to be insured. | Rate. |
|---|---|---|
| On stock, &c., $12,000. | $6,000. | 3-10 of 2 per cent." |

Which statement was signed by Vaughan, and agreed to be true, so far as it was known to him, and so far as it was material to the risk. This was on the 23d of March, 1873. The fire occurred on the fifth day of May, 1873.

The sale of goods after the purchase, and before the fire, amounted to the sum of $653. The jury found the goods which were actually destroyed to have been worth $7,204. These two sums show the value of the goods; to wit, $7,857.

The value of the goods was to be estimated by the applicant. He gave this estimate at $12,000; and there is not the slightest evidence that such was not his honest estimate of their value. Insurance agents, as well as other persons, know with what partiality most men estimate their property, and how much more valuable they esteem it when their own than when it is

their neighbor's. They do not object to this principle when the premiums are received for issuing policies. It is only when losses occur that they seek to apply the more rigid test of actual value.

The value of a stock of goods is not always, nor usually, indicated by its purchase price. Such goods are often bought in the country to sell at retail and at a profit. What may be expected to be obtained for them under such circumstances may reasonably be considered their value; and that the owner and purchaser should estimate them at much more than he gave for them, and should hope and expect to make large gains and profits upon their sale, was, no doubt, understood by the agent making the insurance.

The counsel for the plaintiff in error, in his brief, concedes that it is not every over-valuation which will avoid a policy; but he objects to the charge of the judge, that, to produce this result, the over-valuation must be " grossly enormously " in excess of the truth. It is hardly just to the judge holding the circuit, or to the claimant, that the charge should rest upon this statement. The judge undoubtedly said, " If the valuation was grossly enormously in excess of the value of the goods, then the burden is cast on the plaintiff of showing that he acted honestly and in good faith in making the valuation, and that it was not made for any fraudulent purpose or with any fraudulent intention, but was an honest and unintentional error." He did not, however, say that nothing less than this would have that effect. He said also, " The law exacts the utmost good faith in contracts of insurance, both on the part of the insured and the insurer; and a knowing and wilful over-valuation of property by the insured, with a view and purpose of obtaining insurance thereon for a greater sum than could otherwise be obtained, is a fraud upon the insurance company that avoids the policy. . . . It is a question of good faith and honest intention on the part of the insured; and though he may have put a value on his property greatly in excess of its cash value in the market, yet if he did so in the honest belief that the property was worth the valuation put upon it, and the excessive valuation was made in good faith, and not intended to mislead or defraud the insurance company, then such over-valuation is not a fraudulent over-valuation that will defeat a recovery."

Looking at the whole charge, as we must do, we think the jury were correctly instructed, and that there was nothing said to which the company can properly except.

*Judgment affirmed.*