## FISHER *v.* CRESCENT INS. CO.

*(Circuit Court, W. D. North Carolina.* December Term, 1887.)

INSURANCE—REPRESENTATIONS—WARRANTY.

> A covenant in an application for insurance, after stating the circumstances and value of the property to be insured, recited "that the foregoing is a just, true, and full exposition of all the facts and circumstances in regard to the condition, situation, and value of the property to be insured, so far as the same are known to the applicant; and the same is hereby made a condition of the insurance, and a warranty on the part of the insured." *Held* that, in the absence of fraud or gross negligence, the insurance company was not relieved from the contract of insurance by incorrect representations.[1]

On Motion for a New Trial.

*H. C. Jones* and *C. M. Jordan*, for plaintiff.

*Burwell & Walker* and *F. I. Osborne*, for defendant.

DICK, J. In considering this motion for a new trial we are called upon to construe the covenant and agreement of the plaintiff contained in the following clause of his application for insurance:

"And the said applicant hereby covenants and agrees, to and with the said company, that the foregoing is a just, true, and full exposition of all the facts and circumstances in regard to the condition, situation, and value of the property to be insured, so far as the same are known to the applicant; and the same is hereby made a condition of the insurance, and a warranty on the part of the insured."

This clause was prepared by the experienced and skillful agents of the company, and was printed in the form of application used in its general business; and in construction the words thus carefully and purposely employed must be taken most strongly against the party who formed and furnished the instrument to the applicant. If this clause was intended by the company to be a strict warranty, then the words, "so far as the same are known to the applicant," are unnecessary, and are well calcu-lated to mislead inexperienced and confiding applicants, who listen to and rely upon the urgent and plausible statements and suggestions of eager and expert agents. As both parties to this contract of insurance were required by law to act with entire candor, fairness, and honesty, we may well presume that they fully understood words employed by them in their usual and ordinary meaning, and intended to deal in good faith with each other, and did not contemplate technical objections and

---

[1] See, also, Wilkins v. Insurance Co., (Iowa,) 10 N. W. Rep. 916; Redman v. Insurance Co., (Wis.) 1 N. W. Rep. 393; Insurance Co. v. Fisher, 30 Fed. Rep. 662.

niceties not distinctly expressed or necessarily implied in the terms of their contract. It certainly could not have been the purpose of the company to impose upon the plaintiff the strict obligations of warranty when he was only required to make "a just, true, and full exposition of all the facts and circumstances in regard to the condition, situation, and value of the property to be insured, *so far as the same are known to the applicant.*" Such words are inconsistent with an honest intention of requiring a strict warranty *assuring full knowledge and absolute truth;* and a forced construction, holding them to constitute such an engagement, would tend to impute to the company a skillful and technical artifice devised for the purpose of deception and fraud.

The defendant, in its answer in this case, made no direct charge of fraud against the plaintiff, and there was no evidence of any fraudulent purpose, and we have no right to infer bad faith. He testified that he acted in good faith, and with an honest purpose, and availed himself of what he regarded as reliable sources of correct information, before he made his representations as to the quantity and value of the whisky which he desired to insure. The operations of his distillery were suspended in September; his books had been sent to the collector of the district; his whisky was in a bonded warehouse of the government, under the custody and exclusive control of a store-keeper, in a distant town; and he had no right to require the presence of the store-keeper to gain access to the warehouse, unless he was ready and willing to pay taxes, and remove packages. He wished to insure the whisky because he was not prepared to pay the taxes, and remove packages, and, in the mean time, he wished to guard against damage and loss that might happen by fire. He examined the warehouse book in which the law required the store-keeper to keep an accurate list of the packages and number of gallons in the warehouse, and also the amount at any time withdrawn. He showed this book to the local agents of the company, who assisted him in making a computation of the quantity of whisky in store. His estimation of the value of the whisky was a matter of opinion, founded upon the fact that he had made ready sale by retail of the same quality of whisky at the estimated value, and it was worth that price to him at his usual place of business. What he had made and expected to make by the sale of the whisky, in his ordinary business, might reasonably have been considered by him as a true value at the time he made his application for insurance. *Insurance Co.* v. *Vaughan,* 92 U. S. 516. For the purpose of showing that the company did not intend that the estimated value of the whisky should be a fixed value, and amount to a warranty, or be regarded in their liability for any loss that might happen, we refer to the following clause in the policy:

"The cash value of property destroyed or damaged by fire shall in no case exceed what would be the cost to the assured, at the time of the fire, of replacing the same."

The company seems to have contemplated and provided for a fluctuation in value dependent upon the supply and demand in the markets of the country. In this respect the policy was an *open one,* as the cash

value of the whisky was required to be ascertained and determined at the time of any adjustment of loss. We may well presume from the terms of the policy that the company well knew that such kind of property could not be accurately valued,—that the estimation of value made by the applicant was mere matter of opinion,—and that the only true test of the cash value of whisky in packages was the price at which similar whisky could be purchased in the markets of the country.

The plaintiff probably desired and expected to obtain a *valued* policy when he made application and paid the premium on his estimate of value; but the company was not willing to execute and issue such a policy, although it received, without objection, the full consideration of such a contract. The policy before us has not the essential elements of a *valued* policy. In a valued policy, the agreement of the parties fixes the value of the subject insured. It not only determines the value of the property, but also the extent of the loss that may occur, and is the settled basis of adjustment between the parties, unless the valuation can be shown to be fraudulent or erroneously excessive. If the extent of liability in case of loss is left undetermined in the policy, and is to be ascertained at the time of adjustment of loss, by some method of valuation dependent upon evidence *aliunde*, then the policy is an *open* one. *Boutelle* v. *Insurance Co.*, 31 Amer. Rep. 666. In this policy the company made provision for determining the value of the property, and the extent of its liability in case of loss, by fixing, as a standard of value, the cash price of similar whisky in the markets of the trade. This stipulation made this policy an *open* one; and an overvaluation by the assured in his application was not material to the risk, and did not avoid the policy, as no fraud was alleged or proved. The weight of the testimony showed that the local retail value of the whisky to the assured was as stated by him in his application; and the jury would probably have found that issue in his favor, but for the positive instructions of the court that they must be controlled by the testimony as to the market value, as that was the value stipulated for in the policy by the parties. The jury asssessed the value at a higher rate than appears in the record, but, the court being of opinion that the value assessed was greater than was warranted by the weight of the testimony as to the market value, the counsel of the plaintiff consented that the verdict might be lessened to the amount for which judgment was rendered.

Under such circumstances it seems illiberal on the part of the company to insist that the finding of the jury as to value should avoid the policy. The plaintiff only engaged, in his application, to give the company the benefit of his best information and opinion as to the value of the whisky; and he would have been able to show the correctness of his opinion as to the local value to him in his retail business, but for a clause in the policy, executed by the company after his application was presented, which prevented the evidence on this question from being considered by the jury. Upon this phase of the case I will not indulge in further comment, but proceed to construe the force and effect of the words of warranty, so urgently and ably insisted upon by the defend-

·ant's counsel. This policy must be construed, like all other contracts, by the well-settled rules of interpretation that are applied to written instruments. In looking at the words of the policy, and considering all the parts together in the light of attendant facts and circumstances, well known to the local agents of the company, we are of opinion that we may ·fairly infer that the intention of the parties, when they used the express terms restricting the statement of the applicant as to the quantity and value of the whisky in the warehouse, to *his personal knowledge*, was to qualify the words of warranty, so that they should not extend further than a warranty of the honest belief of the applicant in the truth of his statements. Such statements were clearly in the nature of representations—the mere expression of an opinion founded upon knowledge—derived from what the assured might honestly and reasonably have regarded as reliable sources of information; and as there was no evidence of fraud, gross negligence, or want of good faith on the part of the plaintiff, their incorrectness did not vitiate and avoid the policy on which ·this action was brought.

We think that our opinion is founded in reason and justice, and is fully sustained by adjudged cases. *Bank* v. *Insurance Co.*, 95 U. S. 673; *Moulor* v. *Insurance Co.*, 111 U. S. 335, 4 Sup. Ct. Rep. 466; *Miller* v. *Insurance Co.*, 7 Fed. Rep. 649; *Luce* v. *Insurance Co.*, 19 Myers, Fed. Dec. § 1484.

Motion for new trial denied.