## UNITED STATES FIRE INS. CO. OF THE CITY OF NEW YORK v. SULLIVAN.

Circuit Court of Appeals, Eighth Circuit.
March 16, 1928.

No. 7902.

Insurance ⟨☞⟩500—Insurer, accepting insured's valuation of dwelling without investigation, cannot thereafter plead that there was a fraudulent overvaluation (Comp. St. Neb. 1922, § 7809).

Under Comp. St. Neb. 1922, § 7809, where insurance company accepted insured's valuation of his dwelling and issued fire policy thereon for such valuation, without making any investigation on its part, *held*, that it cannot, in action for full amount of policy by reason of destruction of dwelling, set up defense that insured fraudulently overvalued dwelling.

In Error to the District Court of the United States for the District of Nebraska; Joseph W. Woodrough, Judge.

Action by Joseph B. Sullivan against the United States Fire Insurance Company of the City of New York. Judgment for plaintiff on the pleadings, and defendant brings error. Affirmed.

Frederick D. Silber, of Chicago, Ill. (Samuel Levin, of Chicago, Ill., Clinton Brome, of Omaha, Neb., and Herbert W. Hirsh, of Chicago, Ill., on the brief), for plaintiff in error.

Clement L. Waldron, of Omaha, Neb., for defendant in error.

Before STONE and VAN VALKEN-BURGH, Circuit Judges, and PHILLIPS, District Judge.

STONE, Circuit Judge. This is an action upon a policy of fire insurance for loss of a dwelling located in Nebraska. The trial court sustained a motion for judgment on the pleadings. The insurance company sues this writ of error.

The petition set forth a cause of action on the policy. The amended answer admitted the policy, loss and demand. It continued as follows:

"4. Further answering, and by way of affirmative defense, this defendant alleges the fact to be that on or about the 26th day of May, 1924, the plaintiff herein, Joseph B. Sullivan, was then and for a long time prior thereto had been the owner of and resided in said dwelling house located on what is described as the Southwest Quarter (SW¼) of Section Twenty-Four (24), Township Twenty-Nine (29), range Seven (7) in the County of Dakota, in the State of Nebraska, being more than Sixty (60) miles from the City of Omaha, Nebraska; and the plaintiff then knew and considered said dwelling house to be of the value of Twenty-Five Hundred Dollars ($2,500.00); and that said plaintiff on or about said 26th day of May, 1924, well knowing said facts, applied to the agent of the defendant, in the City of Omaha, Nebraska, for the issuance to him, the plaintiff, of a policy of insurance to indemnify the plaintiff against loss and damage by fire to said dwelling house and it then and there became and was the duty of the plaintiff to advise, inform and notify said agent of the defendant that the actual value of said dwelling house did not exceed Twenty-Five Hundred Dollars ($2,500.00), but the plaintiff, not regarding his duty in that behalf, then and there, with the intention and for the purpose of inducing the defendant, by and through its said agent to issue to him, the plaintiff, a policy of insurance indemnifying the plaintiff against loss and damage by fire, to said dwelling house, in the sum of Five Thousand Dollars ($5,000.00), in the event of the total destruction thereof; and with the further intention thereby to cheat and defraud the defendant of Twenty-Five Hundred Dollars ($2,500.00), in the event of loss and damage in the manner and to the extent aforesaid, and so intending to deceive, defraud and injure the defendant, he, the plaintiff, then and there made and delivered to said agent of the defendant, an application and statement in writing signed by the plaintiff, in and by which said application and statement the plaintiff falsely and fraudulently warranted and represented to the defendant, as a fact, that said dwelling house was then and there of the actual value of Five Thousand Dollars ($5,000.00), and wilfully refrained from informing said agent of the defendant that the actual value of said dwelling house at that time did not exceed the sum of Twenty-Five Hundred Dollars ($2,500.00), as the plaintiff then and there well knew.

"5. And the defendant further avers that it did, by its said agent, then and there believe and rely upon the said written application, warranty and representation of the plaintiff, and the value of said dwelling house therein set forth as aforesaid, to be a statement of fact, and not the opinion of the plaintiff, as to said value, so that the defendant and its said agent was then and there lulled into a feeling of security as to the value of said dwelling house, by reason whereof, it did not make its own independent investigation of the value thereof, nor did its said agent or the defendant know anything

relating to said dwelling house, except as then given to its said agent by the plaintiff.

"6. And the defendant further avers that induced by and in sole reliance upon said false and fraudulent warranty, representation and statement of fact, by the plaintiff, it did, on the 26th day of May, 1924, by its said agent, execute and deliver to the plaintiff, the policy of insurance set forth in plaintiff's petition, in and by which the defendant indemnified the plaintiff against loss and damage by fire to said dwelling house, in the amount of Five Thousand Dollars ($5,000.00), in the event of a total destruction thereof.

"7. And the plaintiff further avers that said dwelling house, at the time of its said total destruction by fire, as alleged in plaintiff's petition, had not been improved since said written application was delivered to said agent of the defendant, as aforesaid; and except for ordinary wear and tear, was in the same condition at the time of said fire as at the time of the delivery of said application to said agent of the defendant, and was of the value of Twenty-Five Hundred Dollars ($2,500.00), as the plaintiff then and there well knew.

"8. And the defendant further avers the fact to be that if the plaintiff, at the time of his securing said policy of insurance, had truly and honestly stated the value of said dwelling house, as he then knew it to be, said policy of insurance would not have been written, nor delivered by the defendant; and the defendant further avers the fact to be that said policy of insurance was secured by reason of the plaintiff's fraud and circumvention, in the manner and by the means hereinbefore set forth, and that said policy of insurance was and is absolutely and wholly null and void and of no effect on account thereof."

The reply, in addition to denying the affirmative matter in the amended answer, pleaded that section 7809 of the Compiled Statutes of Nebraska, 1922, was "in full force and effect at all times referred to in plaintiff's petition" and set forth that section which is as follows:

"Sec. 7809. *Value of Policy.* Whenever any policy of insurance shall be written to insure any real property in this state against loss by fire, tornado or lightning, and the property insured shall be wholly destroyed, without criminal fault on the part of the insured or his assignee, the amount of the insurance written in such policy shall be taken conclusively to be the true value of the property insured and the true amount of loss and measure of damages."

The positions of the company are, first, that this section cannot be construed and does not preclude the insurer from showing that the insured perpetrated a fraud, in respect to value, in procurement of the insurance; second, that, if the section is construed to preclude such defense, it violates the Fourteenth Amendment. These may be treated together.

It is a well-known fact that it has been the practice of some fire insurance companies to insure property at any value the insured cared to put thereon without any investigation as to such value. The natural impulse of the insured was toward amply sufficient or even over valuation. The higher the valuation, the greater the premium. If there were no loss, the insurance company profited through the high valuation. If loss occurred, the insurer would contest the value or amount of recovery and the insured might recover less than the value stipulated in the policy, although he had honestly estimated the value at the time the insurance was taken and had paid premiums on the basis of such estimated value. This situation produced dissatisfaction and litigation. It was to correct this condition, that this section was enacted. Lancashire Ins. Co. v. Bush, 60 Neb. 116, 120, 82 N. W. 313; Calnon v. Ins. Co., 114 Neb. 194, 199, 206 N. W. 765. Also, overvaluation was a temptation to commit arson, which might endanger lives or other property. The statute is not merely for the protection of the insured but "rests on considerations of public policy, and it is probable that the insured could not, even by express contract, relinquish the benefit of its provisions." Lancashire Ins. Co. v. Bush, 60 Neb. 116, 122, 82 N. W. 313, 314; also see Reilly v. Franklin Ins. Co., 43 Wis. 449, 28 Am. Rep. 552; Emery v. Piscataqua Ins. Co., 52 Me. 322; Queen Ins. Co. v. Leslie, 47 Ohio St. 409, 24 N. E. 1072, 9 L. R. A. 45; 14 R. C. L. p. 1306.

The method of the section is to have the value liquidated in the policy by the parties to the contract and removed from dispute and determination "by evidence, agreement or arbitration." Lancashire Ins. Co. v. Bush, 60 Neb. 116, 121, 82 N. W. 313. The statute is confined to real property because values thereof are relatively fixed and certain. Calnon v. Ins. Co., 114 Neb. 194, 198, 206 N. W. 765. The result of this method of making the policy valuation binding was to place on the insurer the duty to make its own in-

vestigation and binding determination of value before such is agreed upon and placed in the contract. Insurance Co. v. Barron, 91 Miss. 722, 727, 45 So. 875; Queen Ins. Co. v. Leslie, 47 Ohio St. 409, 24 N. E. 1072, 9 L. R. A. 45. Neither party can evade the statute by avoiding this duty. If the insurer performs its full duty, in this respect, it is bound by its estimate of value based thereon unless conditions (reducing value), not ascertainable by a reasonably careful inspection and known to the insured, are withheld by the insured. But the insurer cannot close its eyes, make no reasonable investigation, take the bare word of the insured as to value and thereafter challenge such value. To permit this would be to nullify the good effect intended by the statute. It would reinstate the very situation and condition which the statute sought to destroy and prevent. It would encourage conscious overvaluation and, possibly, resulting arson.

As said in Orient Ins. Co. v. Daggs, 172 U. S. 557, 565, 19 S. Ct. 281, 43 L. Ed. 552, the presumptions of the statute "cannot be urged against fraud" but in the same connection the court says that risk to the insurer "can only come from the failure to observe care—that care which it might be supposed, without any prompting from the law, underwriters would observe, and which if observed would make their policies true contracts of assurance, not seemingly so, but really so; not only when premiums are paying, but when loss is to be paid." The fraud pleaded here could not, so far as the answer alleges, have been perpetrated if the insurer had performed its statutory duty—a duty enjoined not alone for the benefit of either or both of the contracting parties but to protect and promote a public policy also beneficent to others. Under such conditions there should be no such defense permitted.

The judgment should be and is affirmed.