GARY L. HEADY, APPELLANT AND CROSS-APPELLEE, V.
FARMERS MUTUAL INSURANCE COMPANY, APPELLEE AND
CROSS-APPELLANT.

349 N.W.2d 366

Filed May 4, 1984. No. 83-197.

H. Daniel Smith of Stehlik, Smith & Trustin, for appellant.

Thomas A. Grennan of Gross, Welch, Vinardi, Kauffman & Day, P.C., for appellee.

KRIVOSHA, C.J., WHITE, and CAPORALE, JJ., and McCOWN and BRODKEY, JJ., Retired.

CAPORALE, J.

Gary L. Heady, plaintiff below, appeals from the trial court's judgment which, pursuant to the jury's verdict in favor of defendant-appellee, Farmers Mutual Insurance Company, denied him recovery on a fire insurance binder. Farmers Mutual has filed a cross-appeal. We reverse and remand for a new trial.

In June of 1981 Gary Heady contacted Patricia Hohman of Insurance Agents, Inc., an independent insurance agency located in Omaha, Nebraska, in order to obtain a fire insurance policy on a house located in Omaha. After Hohman asked Heady questions pertinent to the property, she issued, without prior inspection, a 1-month binder commencing on July 2, 1981, for Farmers Mutual, extending $60,000 of fire and extended coverage insurance on the property. The $60,000 figure represented the reproduction cost of the house, which was in a rundown condition and for which Heady paid a total of $5,000.

Heady was engaged in the business of buying older homes and refurbishing them for resale or rental. He began to remodel the house in question 2 days prior to completing the purchase on July 2, 1981. The work was primarily confined to scraping the exterior paint and doing other work on the outside of the house until July 8, 1981. On that day Heady directed his workmen to remove damaged plaster from the inside walls and ceiling. In the early morning hours of July 9, 1981, the house was destroyed beyond repair by fire.

The chief arson investigator for the Omaha Fire Division testified, without contradiction, that the fire was of incendiary origin and the result of arson. He also stated that removal of the plaster from a load-bearing wall on the main floor caused that wall to burn and weaken the structure nearly twice as fast as would have been the case had the plaster not been removed. Firefighters also found the back door to the house unsecured and, during their efforts to douse the fire, smelled the odor of gasoline. A 1-gallon can was found on the premises. The can had contained gasoline which had been used to repel wasps.

On the evening of July 8, 1981, Heady was at the home of a friend until about 10:30 p.m. He testified that he then returned to his own home, where he was living alone, and remained there until 7:30 a.m. on

July 9, 1981, when he was notified of the fire. After Heady viewed his burned house he called the police and accused a teenage neighbor of setting the fire, even though he had not yet been informed by the fire department of their suspicions as to the origin of the fire. On that same day Heady placed calls to an agent of Farmers Mutual and, during his conversations, was alleged to have stated, "It's an obvious total loss. With the valued policy loss of the State of Nebraska you owe me the full amount." Heady later filed a proof of loss statement swearing that the actual cash value of the property at the time of loss was $60,000.

Farmers Mutual refused to honor Heady's claim, and Heady instituted this suit to recover the $60,000 face value of the insurance binder. Farmers Mutual did not contest the issuance of the binder, but defended on the grounds that the binder was void due to misrepresentations made by Heady to Insurance Agents, and also that Heady had deliberately caused or procured another to cause the fire.

Heady assigns as one error of the district court the admission into evidence, over his objection, of a memorandum from Farmers Mutual to Insurance Agents. That memorandum, dated the same day as the fire but prepared before Farmers Mutual had knowledge of the fire, rejected Heady's application for insurance on the subject dwelling because it was vacant. It also rejected applications for insurance made by Heady on one other dwelling because it was vacant, and further rejected his request to increase coverage from $13,600 to $49,000 on a third dwelling for the same reason. We agree with Heady that the exhibit was not relevant to any fact at issue in the case. Farmers Mutual makes no claim that the memorandum was effective to revoke the binder. It contends, rather, that the memorandum was relevant to show Heady's pattern of overinsuring property. The problem with that contention, from Farmers Mutual's point of view, is that the memo-

randum does not show that fact. The insurance coverage sought by Heady was denied, according to the memorandum, not because the insurance coverage sought was in excess of the actual value of the dwellings, but because the dwellings were vacant. Receipt of the memorandum into evidence improperly permitted the jury to speculate about Heady's motives in attempting to increase coverage on vacant dwellings, and also raised questions as to the reasons those dwellings were vacant. Its receipt was prejudicial error and grounds for reversal and the granting of a new trial. *Exchange Bank v. Gifford*, 102 Neb. 324, 167 N.W. 69 (1918); *Odell v. Story, on rehearing* 81 Neb. 442, 118 N.W. 1103 (1908).

Since the judgment must be reversed and a new trial granted, we address the additional issues raised by both the appeal and cross-appeal in order to answer questions of law which will likely be present again in such new trial. Those issues are: (1) Is Neb. Rev. Stat. § 44-380 (Reissue 1978), the valued policy statute, a viable statute with respect to fire insurance? (2) Does the valued policy statute preclude evidence of the actual value of the premises to establish that the coverage was procured fraudulently? (3) If so, does it preclude evidence of the actual value of the premises to establish a motive for arson? (4) Does the filing of a fraudulent proof of loss statement render void a policy of insurance governed by the provisions of § 44-380?

Turning to the first of these issues, § 44-380 provides:

Whenever any policy of insurance shall be written to insure any real property in this state against loss by fire, tornado, windstorm, lightning, or explosion and the property insured shall be wholly destroyed, without criminal fault on the part of the insured or his assignee, the amount of the insurance written in such policy shall be taken conclusively to be the true value

of the property insured and the true amount of loss and measure of damages.

In *Insurance Co. of North America v. County of Hall*, 188 Neb. 609, 198 N.W.2d 490 (1972), this court held that § 44-380 was not applicable to recovery on a fire insurance policy because a 1951 enactment of the Legislature, codified at then Neb. Rev. Stat. § 44-501 (Reissue 1952), required that all policies of fire insurance conform to the 1943 Standard Fire Insurance Policy of the State of New York, which allows recovery only up to the actual value of the loss. In 1972 the Legislature amended § 44-501 to add subsection (10) of the present statute, which reads: "The policy shall provide that claims involving total loss situations shall be paid in accordance with section 44-380." 1973 Neb. Laws, L.B. 51; § 44-501 (Reissue 1978). Farmers Mutual contends that our opinion in *Insurance Co. of North America* held that § 44-380 was repealed by implication by the 1951 legislative enactment. No language suggesting an implied repeal is found in that opinion. Clearly, that opinion had no effect on the other subjects in § 44-380, namely, policies of insurance covering windstorm, tornado, lightning, or explosion; it therefore cannot be said that the statute had been repealed. We merely resolved the partial conflict between §§ 44-380 and 44-501 in favor of § 44-501. By legislative enactment in 1972 that conflict was removed. As we said in *Insurance Co. of North America v. County of Hall, supra* at 612, 198 N.W.2d at 492, "The fundamental principle of statutory construction is to determine the intent of the Legislature." The clear intent of § 44-501(10) is that the written value provisions of § 44-380 apply to fire insurance policies. We are bound by that intention.

The remaining issues are all concerned with the effect of the valued policy statute on certain fraud defenses asserted by Farmers Mutual.

By its answer to Heady's petition Farmers Mutual claims that Heady should not be allowed to recover

on the insurance binder and the binder should be declared void because Heady fraudulently obtained the coverage by misrepresenting the value of the subject dwelling. Farmers Mutual presented evidence that, if believed, would establish that the actual value of the property was $5,000, while the insured value was $60,000. Farmers Mutual claims the trial court erred in failing to instruct the jury on this defense, while Heady claims that the valued policy statute precludes the introduction of such evidence.

In *Aetna Ins. Co. v. Simmons*, 49 Neb. 811, 69 N.W. 125 (1896), the elements of the fraudulent overinsurance defense are illuminated by language quoted with approval from *Franklin Fire Ins. Co. v. Vaughan*, 92 U.S. 516, 23 L. Ed. 740 (1875):

> "The law exacts the utmost good faith in contracts of insurance, both on the part of the insured and the insurer, and a knowing and willful overvaluation of property by the insured, with a view and purpose of obtaining insurance thereon for a greater sum than could otherwise be obtained, is a fraud upon the insurance company that avoids the policy. It is a question of good faith and honest intention on the part of the insured, and though he may have put a value on his property greatly in excess of its cash value in the market, yet if he did so in the honest belief that the property was worth the valuation put upon it, and the excessive valuation was made in good faith, and not intended to mislead or defraud the insurance company, then such overvaluation is not a fraudulent overvaluation that will defeat a recovery."

49 Neb. at 838-39, 69 N.W. at 134.

Farmers Mutual asserts that *Aetna* supports its position that the valued policy statute does not preclude a fraudulent overvaluation defense. We cannot read the case in that manner. While it is true that a form of the valued policy statute was in effect at that time, the *Aetna* court did not resolve the

exact issue we confront here, because the matter was resolved on the basis that the insurer failed to plead or prove that the insured intentionally over-valued the property, that the representations were material to the risk, and that the insurer had relied upon them. *Aetna* therefore does no more than say that if there were such a defense, it was neither pled nor proved.

On the other hand, in *United States Fire Ins. Co. v. Sullivan*, 25 F.2d 40 (8th Cir. 1928), *cert. denied* 278 U.S. 608, 49 S. Ct. 12, 73 L. Ed. 534, the insured sought recovery against his insurance company for $5,000 after a dwelling valued at $2,500 was de-stroyed by fire. The insurance company defended on the grounds the policy was void, first, because the insured breached an affirmative duty to disclose the actual value was no more than $2,500 and, second, because the insured stated in the application that the dwelling was worth $5,000. The eighth circuit held that, under Nebraska law, these fraud defenses were unavailable to the insurance company to defeat its insured's recovery. It based its decision on Nebras-ka's then valued policy statute, which was identical to our present statute except that it did not cover in-surance policies covering windstorm or explosion. Comp. Stat. § 7809 (1922). We find the reasoning and analysis of the eighth circuit persuasive, and adopt it as our own.

> It is a well-known fact that it has been the practice of some fire insurance companies to in-sure property at any value the insured cared to put thereon without any investigation as to such value. The natural impulse of the insured was toward amply sufficient or even over valuation. The higher the valuation, the greater the premi-um. If there were no loss, the insurance com-pany profited through the high valuation. If loss occurred, the insurer would contest the value or amount of recovery and the insured might re-cover less than the value stipulated in the policy,

although he had honestly estimated the value at the time the insurance was taken and had paid premiums on the basis of such estimated value. This situation produced dissatisfaction and litigation. It was to correct this condition, that this section was enacted. Lancashire Ins. Co. v. Bush, 60 Neb. 116, 120, 82 N.W. 313; Calnon v. Ins. Co., 114 Neb. 194, 199, 206 N.W. 765. Also, overvaluation was a temptation to commit arson, which might endanger lives or other property. The statute is not merely for the protection of the insured but "rests on considerations of public policy, and it is probable that the insured could not, even by express contract, relinquish the benefit of its provisions." Lancashire Ins. Co. v. Bush, 60 Neb. 116, 122, 82 N.W. 313, 314; also see Reilly v. Franklin Ins. Co., 43 Wis. 449, 28 Am. Rep. 552; Emery v. Piscataqua Ins. Co., 52 Me. 322; Queen Ins. Co. v. Leslie, 47 Ohio St. 409, 24 N.E. 1072, 9 L.R.A. 45; 14 R.C.L. p. 1306.

The method of the section is to have the value liquidated in the policy by the parties to the contract and removed from dispute and determination "by evidence, agreement or arbitration." Lancashire Ins. Co. v. Bush, 60 Neb. 116, 121, 82 N.W. 313. The statute is confined to real property because values thereof are relatively fixed and certain. Calnon v. Ins. Co., 114 Neb. 194, 198, 206 N.W. 765. The result of this method of making the policy valuation binding was to place on the insurer the duty to make its own investigation and binding determination of value before such is agreed upon and placed in the contract. Insurance Co. v. Barron, 91 Miss. 722, 727, 45 So. 875; Queen Ins. Co. v. Leslie, 47 Ohio St. 409, 24 N.E. 1072, 9 L.R.A. 45. Neither party can evade the statute by avoiding this duty. If the insurer performs its full duty, in this respect, it is bound by its estimate of value based

thereon unless conditions (reducing value), not ascertainable by a reasonably careful inspection and known to the insured, are withheld by the insured. But the insurer cannot close its eyes, make no reasonable investigation, take the bare word of the insured as to value and thereafter challenge such value. To permit this would be to nullify the good effect intended by the statute. It would reinstate the very situation and condition which the statute sought to destroy and prevent. It would encourage conscious overvaluation and, possibly, resulting arson.

25 F.2d at 41-42.

We recognize that at least one jurisdiction has reached the opposite conclusion. *Zuraff v. Empire Fire & Marine Ins. Co.*, 252 N.W.2d 302 (N.D. 1977). We do not find that case persuasive except for its dissenting opinion. We hold, therefore, as the eighth circuit in this instance correctly foreshadowed in 1928, that the valued policy statute precludes Farmers Mutual from asserting as a defense to liability on its fire insurance contract the fact that its insured either affirmatively misrepresented or failed to disclose the actual value of the subject property.

The next issue is raised by Heady's assertion that the valued policy statute forecloses evidence of the actual value of the destroyed premises in order to show that the insured had a motive to commit arson. Heady argues that *United States Fire Ins. Co. v. Sullivan*, 25 F.2d 40 (8th Cir. 1928), *cert. denied* 278 U.S. 608, 49 S. Ct. 12, 73 L. Ed. 534, supports that assertion. We do not agree. *Sullivan* concerned itself with whether the insured's misrepresentation voided the policy ab initio without reference to showing a motive for arson, for there was no arson in *Sullivan*. Consequently, *Sullivan* does not address the motive issue.

In *Weiner v. Aetna Ins. Co.*, 127 Neb. 572, 587, 256 N.W. 71, 77 (1934), we stated with respect to arson cases:

[I]t is firmly established that in cases of this kind circumstantial evidence is not only admissible, but is usually the only evidence obtainable, since it is very evident that in almost no instance can direct testimony of eyewitnesses be obtained. Persons desiring to burn their property for the purpose of collecting the insurance, or for any other illegal purpose, do not discuss their intentions with others, nor do they carry out such intentions in the light of day.

In light of the facts of this case it was proper for the district court to allow evidence of the actual value of the property to supply a motive to Heady, if the jury wished to so believe, for the commission of the unquestioned act of arson. Failure to allow such evidence would deprive the insurer of one of its vehicles to connect the arson to Heady and not to some other person. We think the proper rule to be that when the loss complained of is shown to be the result of an intentional act of destruction, § 44-380 does not preclude admission of the actual value of the property into evidence for the jury to consider in assessing whether the insured had a motive for committing arson.

This conclusion disposes of Heady's argument that his motion for a directed verdict after the presentation of evidence should have been granted, as well as his motion for judgment notwithstanding the verdict. Upon a motion for directed verdict the party against whom a verdict is directed is entitled to have all controverted facts resolved in his favor and to have the benefit of every reasonable inference deducible from the evidence. *Otto v. Hongsermeier Farms, ante* p. 45, 348 N.W.2d 422 (1984); *May v. Hall Co. L'stock Improvement Assn.*, 216 Neb. 476, 344 N.W.2d 629 (1984). One of the reasonable inferences the jury was entitled to draw from the evidence was that Heady caused the fire which resulted in the destruction of the insured premises. Accordingly,

he was entitled neither to a directed verdict nor to a judgment notwithstanding the verdict.

The final issue involving the effect of § 44-380 concerns the proof of loss statement filed by Heady after the fire, in which he swore that the actual cash value of the insured property was $60,000. At trial Heady's testimony and that of a real estate appraiser placed that value, at the most, at $10,000. Farmers Mutual contends that the false sworn proof of loss statement served to void the insurance binder. In support of this contention Farmers Mutual cites *Home Ins. Co. v. Winn*, 42 Neb. 331, 60 N.W. 575 (1894). That case involved insurance on merchandise and not on real property under a valued policy. The valued policy statute was not involved.

Several relatively old cases from other jurisdictions lend support to the proposition that the overvaluation of totally destroyed property in a proof of loss statement filed in connection with recovery on a valued insurance policy is immaterial and no defense to recovery on the policy, even when a provision in the policy would void the policy for such statements. *Walker v. Phoenix Ins. Co.*, 62 Mo. App. 209 (1895); *Cayon vs. The Dwelling House Ins. Co. of Boston, Mass.*, 68 Wis. 510, 32 N.W. 540 (1887); *Bammessel vs. The Brewers' Fire Ins. Co. of America*, 43 Wis. 463 (1877). We think the rationale expressed in *Cayon* is sound and adopt it.

> It is not perceived how the company could have been influenced by any such over-estimate to settle or compromise, or not to settle or compromise, the claim for the insurance so fixed *conclusively* by the statute; for in no case could the company be compelled to pay more, or could the insured be induced thereby to receive less, than the amount so fixed by law.

68 Wis. at 516, 32 N.W. at 541.

For the reasons hereinabove stated the judgment

is reversed and the cause remanded for a new trial conducted in accordance with this opinion.

REVERSED AND REMANDED
FOR A NEW TRIAL.