ÆTNA INSURANCE COMPANY v. W. A. SIMMONS.

FILED DECEMBER 2, 1896. No. 6880.

·1. **Instructions:** REVIEW: ASSIGNMENTS OF ERROR. Where it is assigned for error that the district court gave or refused to give certain specified instructions, if an examination discloses that the court did not err in giving or refusing to give all of the instructions named the assignment will be overruled.

2. ———: ———: ———. An assignment that a verdict is "contrary to the instructions of the court" will be overruled if it appears, that the verdict is in accordance with any one of the instructions.

3. **Assignments of Error:** BRIEFS: PRACTICE. The rule of practice of this court requires a litigant who brings a judgment here for review on error to specifically state in his petition in error of what action or omission of the court he complains; and in his brief,—in addition to a concise statement of the facts of the case,— under appropriate headings, to allege what particular thing the district court did, or refused to do, which it is claimed was error, collating under such headings the arguments and citing the authorities which he deems sustain his contention.

4. **Review:** ASSIGNMENTS OF ERROR. Only the actions or omissions of a district court which are so specifically assigned, both in the petition in error and in the brief filed here, can be considered.

5. ———: RECORDS: ERRORS: BRIEFS. Every judgment brought to this court for review comes surrounded with the presumption of correctness, and this court will not search a record for the purpose of ascertaining if it contains error. The burden is upon the party complaining of the action of the district court to specifically point out what is complained of and show that it was probably prejudicially erroneous.

6. **Insurance:** VALUE OF INSURED PROPERTY. In a suit upon an insurance policy to recover the value of insured real estate wholly de-

stroyed by fire, the sum for which said property is insured is con-
clusive evidence of its value. (Compiled Statutes, ch. 43, sec. 43.)

7. **Review**: HARMLESS ERROR: INCONSISTENCY BETWEEN VERDICT AND
FINDING. Insurance was written upon personal property to the
amount of $1,150. In a suit upon the policy the jury returned a
general verdict in favor of the assured for $800, and a special find-
ing that the value of the property was $1,600. Judgment was ren-
dered on the general verdict. *Held*, That the inconsistency between
the general and special verdicts was not one of which the insurer
could complain.

8. **Insurance**: WAIVER OF PROOFS OF LOSS. An insurance policy con-
tained a provision that in case of a fire the insured, within sixty
days thereafter, should furnish to the insurer proofs of loss. After
being notified of the loss the insurer's adjuster went to the farm
of the assured, examined and inquired into the loss, cause of the
fire, etc. The assured submitted to the adjuster a written memo-
randum of the items of property destroyed and their value. Some
negotiations took place between the adjuster and the assured,
which resulted in the adjuster offering the assured $900 in full
settlement of the loss. In a suit upon the policy the insurer inter-
posed a defense that the policy had been procured by fraud and
was void from its inception. *Held*, (1) That the conduct of the
insurance company after being advised of the loss justified the
finding of the jury that it had refused to pay the loss and waived
the furnishing of proofs thereof; (2) that the insurance company
waived the proofs of loss required by the policy by defending the
action on the grounds that the policy had never been in force.

9. ———: WAIVER OF ARBITRATION. An insurance company by deny-
ing its liability on the ground of a forfeiture of the policy, by
reason of a breach of warranty of the insured, waives whatever
right it may have had to insist upon arbitration as a means of
determining the amount of the loss. *Home Fire Ins. Co. v. Kennedy*,
47 Neb., 138, followed.

10. ———: LOSS: EXAMINATION OF INSURED: VALIDITY OF REQUIRE-
MENT: TIME AND PLACE. A fire insurance policy contained the fol-
lowing clause: "The insured, as often as required, shall exhibit to
any person designated by this company all that remains of any
property herein described, and submit to examinations, under oath,
by any person named by this company, and subscribe the same, and
as often as required shall produce for examination all books of ac-
count, bills, etc., * * * at such reasonable place as may be des-
ignated by this company or its representative," etc. A suit upon
the policy was defended upon the ground that the insured had re-
fused to submit to an examination under oath. *Held*, (1) Whether
the refusal of the insured to submit to an examination, under oath,
at the request of the insurer constituted a defense to the action not
decided; (2) that a fair construction of the clause only required the
assured to submit to an examination at such reasonable time and

place as might be designated by the company or its representative; (3) that for such refusal of the insured to constitute a defense to the action it was incumbent upon the insurance company to fix a time and place, and to designate some person authorized by law to administer oaths, before whom such examination could be had; (4) that the time fixed for such an examination must have been within a reasonable date after notice of the fire; the place of examination must have been a reasonably convenient one within the county where the assured resided.

11. ———: WARRANTIES IN APPLICATION: CONSTRUCTION: FALSE STATE-MENTS: PLEADING AND PROOF. An insured made application in writing for insurance on certain buildings and personal property on his farm, in which he valued his dwelling at $700, his barn at $500, his milk house at $100, his household furniture at $500, butter and cheese apparatus and stock at $600, and hay and grain at $500. The application also contained the following: "Q. State the actual amount paid for the land. A. Sixteen hundred dollars. Q. State terms of sale. A. Cash." The application also recited: "The said applicant hereby warrants, covenants, and agrees * * * that the foregoing is a full, just, and true exposition of all the facts and circumstances, condition, situation, and value of and title to the property to be insured, and is offered as a basis of the insurance requested, and is made a special warranty, the same as if written on the face of the policy." The application was made a part of the policy issued, and the latter contained this clause: "This entire policy shall be void if the assured has concealed or misrepresented, in writing or otherwise, any material fact or circumstance concerning this insurance or the subject thereof." A suit on the policy was defended on the grounds (*a*) that the statements of the assured in the application were warranties; (*b*) that the valuation placed by the assured on the insured property and his answers that he had paid sixteen hundred dollars cash for his land were false. *Held*, (1) That the application and the policy should be construed together; (2) that the statements and answers made were representations, and not warranties; (3) that in order for such representations to constitute a defense to the action it was incumbent upon the insurance company to plead and prove that the statements and answers were made as written in the application; that they were false; that they were false in some particular material to the insurance risk; and that the insurance company relied and acted upon such statements.

12. ———: WARRANTY. A warranty, in insurance law, is the assertion by the assured of some fact on the literal truth of which the validity of the policy depends, without regard to the materiality of such fact or the motive which prompted the assertion.

13. ———: REPRESENTATION. A representation, in insurance law, is also the assertion by the insured of some fact, but the validity of the policy does not depend upon the literal truth of the assertion.

14. ———: ———: WARRANTY. Whether an assertion made by the insured of the existence of a fact is a warranty or representation is a question of law.

15. ———: ———: ———. If a doubt exists as to whether a statement made is a warranty or representation, it will be *held* a representation.

16. ———: WARRANTIES. Warranties are not to be created nor extended by construction.

17. ———: ———: REPRESENTATIONS: CONSTRUCTION. In construing a contract, for the purpose of determining whether the statements made therein were intended by the parties thereto to be warranties or representations, the court will take into consideration the situation of the parties, the subject-matter, and the language employed, and will construe a statement made to be a warranty only when it clearly appears that such was the intention of the contracting parties; that the mind of each party consciously intended and consented that such should be the interpretation of his statements.

ERROR from the district court of Dawes county. Tried below before KINKAID, J.

*Sylvester G. Williams* and *George T. H. Babcock*, for plaintiff in error.

*C. H. Bane* and *D. B. Jenckes, contra.*

RAGAN, C.

This is a suit on a fire insurance policy brought in the district court of Dawes county by W. A. Simmons against the Ætna Insurance Company, hereinafter called the "insurance company." Simmons had a verdict and judgment. The insurance company prosecutes a petition in error.

1. The insurance company in the motion filed by it for a new trial assigned among others the following grounds: "The verdict is contrary to the instructions given by the court on its own motion. The court erred in refusing to give the instructions asked for by the defendant. The court erred in refusing to give the third, eighth, eleventh, thirteenth, fourteenth, sixteenth, seventeenth, nineteenth, and twenty-first instructions asked for by defendant. The court erred in giving the fifth, sixth,

seventh, twelfth, and sixteenth instructions asked for by defendant." We have examined the instructions given and refused, and ascertained that the district court did not err in giving all the instructions given, nor in refusing to give all the instructions refused, nor is the verdict contrary to all the instructions given by the court on its own motion. We cannot, therefore, further consider the assignments in the petition in error directed to the action of the court in giving and refusing to give certain instructions, nor to the assignment that the verdict is contrary to the instructions given by the court upon its own motion.

2. Counsel for plaintiff in error content themselves with a somewhat lengthy and desultory argument upon certain branches of insurance law, and then say: "The other errors referred to appear *seriatim* upon the record at pages 1, 5, 6, 7, 10, 11, 12, 14, 21, 27, 33, 34, 48, 49, 52, 53, 59, 66, 90, 102, 108, 109, 116, 119, 124, 135, and 137. A reference to the record we think a sufficient presentation of these various assignments, to which we ask the attention of the court without further argument." The rule of practice in this court is a very simple one. It requires of a litigant who brings a judgment of a district court here for review on error to specifically state in his petition in error of what action or omission of the district court he complains; and the brief filed should,—in addition to a concise statement of the facts of the case,— under appropriate headings, allege what particular thing the district court did, or refused to do, which the litigant claims was erroneous; and collated under such headings the litigant should state such arguments and cite such authorities as he deems sustain his contentions. Every judgment brought to this court for review comes surrounded with the presumption of correctness. It is not the duty of this court to search through a record for the purpose of ascertaining if it can find something which the court below did, or omitted to do, which is error; but the burden is upon the party complaining of the ac-

tion of the *nisi prius* court to specifically point out the alleged act complained of and show that it was probably prejudicially erroneous. Only the actions or omissions of the district court which are so specifically assigned, both in the petition in error and in the brief filed here, can be considered. There remain, then, in this case to be considered only two questions, namely: Is the finding of the jury supported by sufficient evidence? Is the judgment rendered the one that should have been pronounced under the evidence in the case and the law applicable thereto?

3. Is the value fixed by the jury on the property destroyed by fire sustained by sufficient evidence? The policy in suit covered both real and personal property. The real property consisted of a frame dwelling and additions thereto insured for $500, a barn insured for $300, and a milk house insured for $50. The general verdict of the jury fixed the value of these buildings at the time of their destruction at $850. The undisputed evidence is that these buildings were totally destroyed. Now, section 43, chapter 43, Compiled Statutes, provides: "Whenever any policy of insurance shall be written to insure any real property in this state against loss by fire, * * * and the property insured shall be wholly destroyed without criminal fault on the part of the insured or his assigns, the amount of insurance written in such policy shall be taken conclusively to be the true value of the property insured, and the true amount of loss and measure of damages." Under the issues of the case the verdict of the jury includes a finding that the destruction of the property by fire was without criminal fault on the part of the insured or his assigns. In *Home Fire Ins. Co. v. Bean*, 42 Neb., 537, it was ruled: "Where real property is wholly destroyed by fire, any provision of a policy of insurance covering such property which in any manner attempts to limit the amount of the loss to less than the sum written in the policy is in conflict with the statutory rule, invalid, and will not be enforced."

To the same effect see *German Ins. Co. v. Penrod*, 35 Neb., 273; *German Ins. Co. v. Eddy*, 36 Neb., 461; *Insurance Co. of North America v. Bachler*, 44 Neb., 550. The contract in evidence, upon which this suit is based, the statute quoted above, and the authorities just cited conclusively establish the correctness of the finding of the jury as to the value of the buildings destroyed.

4. By the policy in suit Simmons was insured against loss or damage by fire upon hay and grain, in barns or in stacks, to the amount of $300; household and kitchen furniture, both useful and ornamental, $500; butter and cheese apparatus and stock on hand in milk house, $350, or a total insurance of $1,150 on personal property. The jury by its general verdict found the value of the insured personal property destroyed to be $800. Simmons testified that at the time of the fire the butter and cheese apparatus and butter and cheese insured were in the milk house on his farm and were totally destroyed; that the value of the butter and cheese apparatus was $650; that there were on hand in the milk house at the time of the fire 300 pounds of butter, worth 25 cents per pound, or $75, which was also destroyed; that there were destroyed 45 tons of hay, worth $5 a ton, $225; 500 bushels of wheat in the stack, worth 55 cents per bushel, $275. His attention was next challenged to the articles of household and kitchen furniture destroyed by fire, and he was compelled, at great length, to enumerate the numerous articles and their value. Among the articles and their value which he testified were destroyed were the following: A cook stove, $25; cooking utensils, $30; two bedsteads, $14; two bedsprings, $5; two mattresses, $10; two feather beds, $20; bedding, such as quilts, etc., $20; forty yards of carpet, $10; one "catskin" overcoat, $28; two suits of clothes, $60; a miscellaneous lot of underwear, $15; boys' clothes and underclothing, $12; eight woolen dresses belonging to his wife, $80; a lady's coat, $24; his wife's underclothing, shoes, hats, shawls, $50; twenty or thirty books, $15; sewing machine, $28;

56

three or four mirrors, $5; a number of pictures in frames, $2; set of silverware, $50; silver knives, forks, etc., $25; a hotel outfit of china, tableware, cups, saucers, etc., $150 to $200; potatoes on hand, $2.50; four hundred pounds salted pork, $40; twenty gallons fruits and jellies, $50; cupboard, $10; center table, $5; a bureau filled with underclothing, etc., $30; a commode, wash bowl, and pitcher, $6; fourteen chairs, $7; a clock, $7; a watch, $10,—making a total of $2,096. It will thus be seen that the finding of the jury that the value of the personal property destroyed was $800 does not lack evidence to support it. To be sure, the evidence was conflicting as to the value of some of this property, but the weight of evidence was for the jury. They saw the witnesses. They heard them testify. They have considered the testimony and have reached a conclusion; and since there is in the record evidence to support this conclusion, we are not at liberty to disturb it.

5. The jury, at the request of the insurance company, returned special findings as well as a general verdict, and it is said that the two are inconsistent. By their special findings the jury said that the value of the butter and cheese apparatus and stock at the time of the fire was $300; that the value of the household and kitchen furniture destroyed was $900; that the value of the hay and grain destroyed by the fire was $400, or a total of $1,600. But this is not an inconsistency of which the insurance company can complain. It was not prejudiced by it. Since the general verdict fixed the value of the personal property at $800 and a judgment was rendered against it for that amount, it has no cause of complaint because the special finding of the jury fixed the value of this same property at $1,600.

6. It is also said that the value placed upon the personal property by the special findings of the jury has no support in the evidence. This argument is untenable. We conclude, therefore, that the general verdict of the jury, on which the judgment complained of was ren-

dered, is supported by sufficient evidence so far as the same relates to the value of the insured personal property destroyed.

7. The policy in suit provided that the insured within sixty days after the occurrence of a fire should furnish to the insurance company proofs of loss. The insured neglected to furnish the proofs of loss within sixty days after the fire, and it is now insisted that for this reason the judgment is erroneous. One of the issues made by the pleadings and litigated on the trial was whether the insurance company had waived formal proofs of loss, and the jury found that it had. The evidence tends to show that the fire occurred on the 8th day of November, 1892; that the insured at once gave notice of this to the insurance company, and that within a few days thereafter the adjuster of the company came to the farm of the assured, examined and inquired into the loss, the cause of the fire, etc.; that the assured stated to the adjuster the particulars of the fire, submitted to him a written memorandum of the items of property destroyed, and their value. Some conversations and negotiations took place between the adjuster and the assured, which resulted in the adjuster finally offering the assured $900 in full settlement of the loss. This offer was declined by the assured, whereupon the adjuster departed. We think the conduct of the adjuster justified the conclusion of the jury that the insurance company had refused to pay the loss. In *Home Fire Ins. Co. v. Hammang*, 44 Neb., 566, it was held that an insurance company had waived proof of loss because its adjusting agent, with a knowledge of the fire, went upon the ground, examined into the circumstances, took possession of books and invoices of the insured, and with his help made an estimate of the amount of the loss. But the insurance company defends this action upon the ground, as we shall presently see, that the policy was void from its inception. If this was a fact, then there was no necessity for proofs of loss. In *Dwelling-House Ins. Co. v. Brewster*, 43 Neb., 528, it was held

that proofs of loss required by a condition of an insurance policy are waived when the insurance company denies any liability for the loss on the ground that the policy was not in force at the date of the loss. (See, also, *German Ins. Co. v. Kline,* 44 Neb., 395; *Rochester Loan & Banking Co. v. Liberty Ins. Co.,* 44 Neb., 537; *Home Fire Ins. Co. v. Hammang,* 44 Neb., 566.) We reach the conclusion, therefore, that the failure of the insured to furnish formal proofs of loss to the insurance company within sixty days after the fire afforded the insurance company in this case no defense to this action.

8. The policy in suit also provided that in case of a disagreement between the insured and the insurer as to the amount of loss or damage occasioned to the insured property by fire the amount of such loss should be determined by arbitration. It is now said that the insured refused to submit the amount of the loss to arbitration and for that reason the judgment must be reversed. But the doctrine of this court is that if parties to a contract agree that if a dispute arise between them such dispute shall be submitted to arbitration, then refusal to arbitrate, or no arbitration, is not a defense to an action brought on such contract by one of the parties thereto. (*National Masonic Accident Association v. Burr,* 44 Neb., 256, and cases there cited.) And in *Home Fire Ins. Co. v. Kennedy,* 47 Neb., 138, it was held: "An insurance company, by denying its liability on the ground of a forfeiture of the policy by reason of a breach of warranty by the insured, waives whatever right it may have had to insist upon arbitration as a means of determining the amount of the plaintiff's damage." The judgment under consideration was, therefore, not erroneous, because the insured refused to submit the question of the amount of his loss to arbitration.

9. The policy in suit contained a clause in the following language: "The insured, as often as required, shall exhibit to any person designated by this company all that remains of any property herein described, and submit to

examinations under oath by any person named by this company and subscribe the same; and as often as required shall produce for examination all books of account, bills, invoices, and other vouchers or certified copies thereof if originals be lost at such reasonable place as may be designated by this company or its representative, and shall permit extracts and copies thereof to be made." The insured resided near Chadron, Nebraska. The adjuster and managing agents of the insurance company appear to have resided at Denver, Colorado. More than sixty days after the fire occurred, and long after the insurance company had been notified thereof, and after the adjuster of the insurance company had visited Nebraska and inquired into the circumstances of the fire, as already stated, he wrote a letter to the insured, posted at Denver, Colorado, dated January 27, 1893, in which he said: "The company desires that you will submit to examination under oath. Please name to me a convenient date at which you will be prepared to submit to examination, and oblige." It is now said that the insurer requested the insured to submit to an examination under oath and that the latter refused, and that therefore the judgment is erroneous. Whether the refusal of an insured to comply with such a provision in an insurance contract is a defense to an action upon the policy we do not decide. The writer, speaking for himself only, does not think it is. If the insured had submitted to an examination and sworn falsely he could not have been prosecuted for perjury, as the oath would not have been taken in any proceeding where the law required him to take an oath. The effect of such a clause in the policy therefore amounts to no more than a promise upon the part of the assured to furnish to the insurer, on request, such information as may be in his possession. In *Clement v. British-American Assurance Co.*, 141 Mass., 298, it seems to have been held that where an insurance policy provided that in case of loss or damage to insured goods the insurer should separate the damaged portion of the stock from the undam-

aged and furnish to the insurer a total statement of damages claimed on each item, the refusal of the insurer to comply with this provision of the policy afforded no defense to an action thereon. But if the clause in the policy under consideration be one with which the insured must comply in order to recover, then it was incumbent upon the insurance company to fix a time and a place and to name some person authorized by law to administer oaths before whom the examination of the insured should be had. The insurance company did none of these things. Doubtless the time fixed for the examination must have been within a reasonable date after the company received notice of the fire. Doubtless the place of the examination would have been at a reasonably convenient place in the county where the assured resided. It remains to be said of the question under consideration that a fair construction of the clause of the policy is that the insured shall submit to examination under oath at such reasonable place as may be designated by the company or its representative. We reach the conclusion that the insurance company, by failing to demand this examination within a reasonable time after the fire, and by failing to designate a time and place and an officer before whom such examination should occur, has not put itself in a position to urge the refusal of the insured to submit to an examination as a defense to this action.

10. Simmons, at the time of the issuance of the policy in suit, resided on the southeast quarter of section 17, township 33 north, and range 49 west, in Dawes county. At the time he applied for the insurance he signed an application in writing, which, so far as material here, was in the following language:

"Application of W. A. Simmons, of Chadron, Nebraska, for insurance against loss or damage by fire by the Ætna Insurance Company, in the sum of two thousand dollars, for the period of three years, * * * on property specified below: Frame dwelling-house, cash valuation, $700; amount to be insured, $500. Household

furniture therein, cash valuation, $1,000; amount to be insured, $500. Barn, cash valuation, $500; amount to be insured, $300. Milk house, cash valuation, $100; amount to be insured, $50. Fixtures and stock therein,— that is, milk house,—cash valuation, $600; amount to be insured, $350. Hay and grain, cash valuation, $500; amount to be insured, $300.

\*       \*       \*       \*       \*       \*       \*

"The applicant will answer the following questions and sign the same as a description of the premises on which the insurance will be predicated:

"Building: When built?   1886-7.

"What size?   About 16x24 and additions.

"Is it stone, brick, or wood?   Wood.

"Are foundations wood, brick, or stone?   Wood.

"Is it in good repair?   Yes.

"How many stories high?   Two.

"Have premises ever been on fire?   No.

\*       \*       \*       \*       \*       \*       \*

"How many chimneys?   One.

"Are they brick?   Yes.

"Are all built from the ground?   No.

"Any tile or terra cotta flues in building?   No.

"Are pipes in good order?   Yes.

"How near to wood?   Ten inches.

"Do pipes pass through wood partitions or floors? Yes.

"If so, how secured?   Zinc protection.

"Do any stove-pipes pass through the roof or sides of the building?   Yes, through summer kitchen.

\*       \*       \*       \*       \*       \*       \*

"What is it covered with?   Shingles.

"Is there a scuttle and stairs to it?   Stairs.

"Are the gutters stone, metal, or wood?   None.

"Are premises occupied entirely by applicant?   Yes.

\*       \*       \*       \*       \*       \*       \*

"For farm dwelling only?   Yes.

"For farm barns only?   Yes.

"What is the present cash value of property to be insured? $3,000.

"How many acres of land in the farm? 160.

"State average value per acre. $10.

"How recently has the property changed hands? Yes; no.

"State the actual amount paid for it. $1,600 for land.

"State terms of sale. Cash.

"Is the property profitable as an investment? ·Yes.

*          *          *          *          *          *          *

"And the said applicant hereby warrants, covenants, and agrees to and with said company that the foregoing is a full, just, and true exposition of all the facts and circumstances, condition, situation, and value of and title to the property to be insured, and is offered as a basis of the insurance requested and is made a special warranty, the same as if written on the face of the policy."

This application was made a part of the policy issued and now in suit. The policy refers to the application and declares that it is made a part thereof. Among other things, the policy provides: "This entire policy shall be void if the assured has concealed or misrepresented, in writing or otherwise, any material fact or circumstance concerning this insurance or the subject thereof." It is now insisted that each and every one of the statements and answers to questions made by Simmons in this application were and are warranties; that some of said statements or answers were false, and that, therefore, the policy has never been in force and was void from its inception. Are the statements in this application warranties?

*Campbell v. New England Mutual Life Ins. Co.*, 98 Mass., 381, was a suit on a life insurance policy. The policy was issued in pursuance of a written application therefor, which application declared that the statements therein were made as a basis for the insurance, and that they were full, fair, and true answers to the questions pro-

pounded. The application further recited that the appli-
cant had read the questions and answers and was aware
that any fraudulent or untrue answers, or a concealment
of facts or a non-compliance with the terms of the policy
would vitiate the insurance. The application was made
a part of the policy and the latter provided: "If the state-
ments made by the assured should be found in any re-
spect untrue, that the policy should be void." In the
application the assured was asked whether he was or
had been subject to or at all affected by bronchitis,
consumption, prolonged coughs, or spitting of blood. To
all these questions he answered no. The suit upon the
policy was defended upon the ground that the answers
to these questions were false; that the answers were
warranties, and that, therefore, the policy was void from
its inception. But the court held that the answers were
not warranties, but representations, which need not be
complied with literally. The court said: "The remain-
ing exceptions mostly depend upon the question whether
the statements made in the application, by way of an-
swers to interrogatories, are to have the effect of war-
ranties, or to be regarded as representations only.   *   *
A warranty in insurance enters into and forms a part of
the contract itself. It defines, by way of particular stipu-
lation, description, condition, or otherwise, the precise
limits of the obligation which the insurers undertake to
assume. No liability can arise except within those lim-
its. In order to charge the insurers, therefore, every one
of the terms which define their obligation must be satis-
fied by the facts which appear in proof. From the very
nature of the case the party seeking his indemnity, or
payment under the contract, must bring his claim within
the provisions of the instrument he is undertaking to
enforce. The burden of proof is upon the plaintiff to
present a case in all respects conforming to the terms
under which the risk was assumed. It must be not merely
a substantial conformity, but exact and literal; not only
in material particulars, but in those that are immaterial

as well. A representation is, on the other hand, in its nature, no part of the contract of insurance. Its relation to the contract is usually described by the term 'collateral.' \* \* \* It is sufficient for the plaintiff to show fulfillment of all the conditions of recovery which are made such by the contract itself. The burden is then thrown upon the defendant to set forth and prove the collateral matters upon which he relies. \* \* \* In considering the question whether a statement forming a part of the contract is a warranty, it must be borne in mind, as an established maxim, that warranties are not to be created nor extended by construction. They must arise, if at all, from the fair interpretation and clear intendment of the words used by the parties. \* \* \* When, therefore, from the designation of such statements as 'statements' or as 'representations,' or from the form in which they are expressed there appears to be no intention to give them the force and effect of warranties, they will not be so construed."

*Daniels v. Hudson River Fire Ins. Co.*, 12 Cush. [Mass.], 416, was a suit upon a fire insurance policy. The policy was based upon a written application, which contained, among others, the following questions:

"Q. Is there a good forcing-pump in the factory, designed expressly for putting out fire, and at all times in condition for use?

"A. A small force-pump for filling barrels, and with hose to reach each room.

"Q. Are there casks in each loft, constantly supplied with water?

"A. There is in each room casks of forty-two gallons each, kept full constantly; also twenty-four buckets in mill."

The policy provided that it was made in conformity with the terms and conditions of the application, and further provided that if the insured had made any misrepresentation or concealment the policy should be void. There was a covenant in the application that the assured

had made a full, just, and true exposition of all the facts
and circumstances in regard to the condition, situation,
value, and risk of the property insured.   The suit on the
policy was defended upon the ground that the answers
to the questions in the application were warranties; that
they were false, or not literally true, at the time of the
application, and that, therefore, the policy was void.
The *nisi prius* court instructed the jury that the state-
ments in the application were not warranties requiring
an exact and literal compliance, but that they were rep-
resentations, and as such must have been substantially
true and correct as to things done or existing at the time
the policy was issued.   The supreme court of Massachu-
setts, discussing this instruction, said: "The court are of
opinion that, looking at the policy and the application,
this instruction was correct.   There is undoubtedly some
difficulty in determining by any simple and certain test
what propositions in a contract of insurance constitute
warranties, and what representations.   One general rule
is that a warranty must be embraced in the policy itself.
If, by any words of reference, the stipulation in another
instrument, such as the proposal or application, can be
construed a warranty, it must be such as make it in
legal effect a part of the policy.   *   *   *   If any state-
ment of fact, however unimportant it may have been
regarded by both parties to the contract, is a warranty,
and it happens to be untrue, it avoids the policy.   If it
be construed a representation and is untrue it does not
avoid the contract if not willful or if not material.   To
illustrate this:  The application in answer to an inter-
rogatory is this:  'Ashes are taken up and removed in
iron hods;' whereas it should turn out in evidence that
ashes were taken up and removed in copper hods.   *   *
If this was a warranty the policy is gone; but if a repre-
sentation it would not, we presume, affect the policy,
because not willful or designed to deceive; but more
especially because it would be utterly immaterial and
would not have influenced the mind of either party in

making the contract or fixing its terms.    Hence it is, we suppose, that the leaning of all courts is to hold such a stipulation to be a representation, rather than a warranty, in all cases where there is any room for construction, because such construction will, in general, best carry into effect the real intent and purpose which the parties have in view in making their contract."

*Supreme Lodge, Knights of Pythias of the World, v. Edwards,* 41 N. E. Rep. [Ind.], 850, was a suit upon a life insurance policy or certificate, based on a written application made therefor.    The defense was that the answers to questions or statements made in the application were warranties; that they were false or not literally true, and, therefore, that the policy was void from its inception.    The court said: "The policy and application in this case must be read together, as together evidencing the contract.    In the application appears the terse, plain, and emphatic statement, referring directly to the answers in question, that they are warranted to be true and are offered to the Endowment Rank as a consideration of the contract.    There is also contained in the application proper  *  *  *  this statement: 'I declare, furthermore, that all the above statements are true, to the best of my knowledge and belief, and that I have not concealed or omitted to state anything regarding my health, past or present, affecting the expectancy of my life, and that I hereby consent and agree that any untrue statement made in this application, or to the medical examiner, touching my health or expectancy of life, shall work a forfeiture to all my rights.'    In the certificate itself there is no mention of any warranties, but it is expressly said that it is issued in consideration of the 'representations and declarations made in the application' and the payment of the entrance fees, dues, etc.    Thus we have these statements of the insured referred to as 'warranties' at one time, and as 'representations' at another.    Under such circumstances they must, upon the authorities, be construed to be representations only.  *  *  *  'By rea-

son of their stringent character, warranties in insurance policies are not favored in law. The court will construe as a warranty that only which the parties have plainly and unequivocally declared to be such.' * * * When, considering both policy and application together, it is left uncertain or ambiguous whether statements are to be taken as warranties or representations, the construction most favorable to the policy holder is to be adopted."

*Northwestern Mutual Life Ins. Co. v. Woods*, 39 Pac. Rep. [Kan.], 189, was a suit upon a life insurance policy based upon a written application. In the latter the assured was asked and answered, among others, the following question: "Q. Is there anything, or has there ever been anything, in your physical condition, family or personal history, or habits, tending to shorten your life, which is not distinctly set forth above? A. No." The application recited that all statements therein were declared by the assured to be warranties. The policy provided that if any statement made in the application for the policy should be found incorrect, the policy should be void. The action was defended upon the ground that all the statements made in the application were warranties; that the answer of the assured to the question quoted above was false when made; and that, therefore, the policy had never been in force. The supreme court of Kansas refused to sustain this contention of the insurance company, and summed up its conclusions in the syllabus of the case as follows: "The statements contained in an application for a policy of life insurance will not be construed as warranties, which, if untrue in any particular, would avoid the policy, unless the provisions of the application and policy, taken together, leave no room for any other construction. While in the application for the policy in this case it is declared that all the statements written on the application are warranted to be true, inasmuch as the policy refers to the answers to the questions contained in the application as statements, and not as warranties, the court will construe them merely as

statements; and therefore holds that the insured was bound only to the exercise of good faith, and to answer truthfully as to all matters within his knowledge, and an omission to state a fact which he honestly deemed immaterial will not vitiate the policy."

*Miller v. Mutual Benefit Life Ins. Co.*, 31 Ia., 216, was a suit upon a life insurance policy based upon a written application in which the assured was asked and answered, among others, the following questions:

"Q. Is the party sober and temperate?

"A. Yes.

"Q. Has he always been so?

"A. Yes."

The application was made a part of the insurance policy and the action was defended upon the ground that the answers to the questions quoted above were warranties; that they were false when made; and that, therefore, the policy had never been in force. After a very exhaustive and learned examination of the question the supreme court declared that the answers of the assured to the questions propounded to him were mere representations, and summed up its conclusion as follows: "Matters of warranty constitute a part of the contract, and it is necessary that they should be exactly and literally complied with; but matters of representation are but collateral to the contract, and it is sufficient if they are substantially complied with. Warranties will not be created nor extended by construction. They must arise from the fair interpretation and clear intendment of the language used. The application is, in itself, merely collateral to the contract of insurance, and its statements are to be classified * * * as representations, unless, by force of a reference in the policy, they are converted into warranties, and the purpose is clearly manifest, from the papers thus connected, that the whole shall form one entire contract."

*Anders v. Supreme Lodge, Knights of Honor*, 17 Atl. Rep. [N. J.], 119, was a suit upon a life insurance contract.

The contract was based upon a written application and recited that it was issued upon condition that the statements made by the insured in his application should be made a part of the policy. In the application the assured certified that the answers made by him to questions propounded were true; that there were no misrepresentations or suppression of known facts, and he acknowledged and agreed that these statements should form the basis of the insurance contract and constitute warranties. The assured further stated in the application that the above questions had been answered to the best of his knowledge and belief. The action was defended upon the ground that the answers of the assured in his application were warranties; that one of such answers was false and that the policy was therefore void. The supreme court of New Jersey, in discussing the question, said: "At the trial it was proved that one of the statements attached to the application was not true, and Mr. Justice De Pue, who presided at the circuit, instructed the jury that such fact did not, *proprio vigore,* avoid the policy, but that to produce that result it must have been false to the knowledge of the applicant. This is the proposition the correctness of which is now challenged. But this court is of opinion that the construction adopted is the proper one. In the interpretation of warranties of this class the judicial leaning is invariably against a literal rendering of the stipulation, and in favor of construing the clause according to its spirit and purpose. It is to be presumed that the parties dealt with each other in this particular in good faith, intending to lay a reasonable basis for the promise to insure, and consequently it requires plain and unambiguous terms to induce the court to conclude that it was the conventional purpose that the policy should be a nullity in case the assured had in his application unintentionally misstated a fact. Indeed, the conditions of the present case appear to repudiate the hypothesis that it was the intention of these contractors to make the life of the

policy dependent upon the absolute and exact verity of the truth of each of the statements in question. For example, the assured, when asked at what age his father died, answered, at the age of seventy-five years. Now, on the theory that absolute truth is required, if it should be shown that the parent died a day or an hour before or after he had reached such designated age, the contract of insurance would be entirely void; and assuredly it is scarcely conceivable that such an agreement was either consciously offered on the one side, or consciously accepted on the other. There is nothing in the law that forbids persons from entering into such preposterous agreements if they see fit so to do; but fortunately the principles of jurisprudence forbid the court from constructing them out of uncertain phraseology. And this we would do in the present instance by adopting the theory of the defense, for the language of the stipulation in question is plainly ambiguous. The words are: 'I certify that the answers made by me,' etc., 'are true, in which there are no misrepresentations or suppression of known facts.' Upon the interpretation as contended for by the defense, that the allegation that the answers are true, means that they are absolutely true, it is obvious that the subjoined certification, that in such absolutely true answers there are no misrepresentations, becomes entirely nugatory. To give a consistent effect to both branches of the clause, it is necessary to read it in the sense that the answers are true to the extent of not being consciously false." To the same effect see *American Popular Life Ins. Co. v. Day*, 39 N. J. Law, 89, *Northwestern Benevolent & Mutual Aid Association v. Cain*, 21 Ill. App., 471, *Price v. Phœnix Mutual Life Ins. Co.*, 17 Minn., 473, and *Hanover Fire Ins. Co. v. Gustin*, 40 Neb., 828.

In *Mulville v. Adams*, 19 Fed. Rep., 887, it was held that "conditions that work a forfeiture are not to be extended by construction. Being put into the policy for the benefit of the insurer, they will be construed most liberally for the assured."

*First National Bank v. Hartford Fire Ins. Co.*, 95 U. S., 673, was a suit upon a fire insurance policy. The policy was based upon a written application made by the assured. In the application the assured was directed to answer certain questions and sign the same "as a description of the premises on which the insurance will be predicated." He was asked and answered, among others, the following questions:

"Q. What is the cash value of the buildings aside from hand and water power?

"A. Fifteen thousand dollars.

"Q. What is the cash value of the machinery?

"A. Fifteen thousand dollars."

The application also recited that the assured hereby covenants and agrees that the foregoing is a just, full, and true exposition of all the facts and circumstances in regard to the condition, situation, value, and risk of the property to be insured, so far as the same are known to the applicant and are material to the risk. The application was made a part of the insurance policy and the policy recited not only that the application should be considered a part of it, but that the application should be considered a warranty by the assured, and that if he, in such application, had made any erroneous representations or omitted to make known any fact material to the risk, that the policy should be void. The policy was defended upon the ground that the answers of the assured as to the value of his building and the value of his machinery were warranties; that such answers were false, and that, therefore, the policy was void. The circuit court found that the value of the building, represented to be worth $15,000, was $8,000; that the value of the machinery, represented to be worth $15,000, was $12,000; and the circuit court concluded that the answers of the assured were warranties and that the policy was void. The bank then sued out a writ of error to the supreme court of the United States. That court held that the statements made by the insured were representations, and

not warranties, and reversed the judgment of the circuit court. The supreme court said: "The entire application having been made, by express words, a part of the policy, it is entitled to the same consideration as if it had been inserted at large in that instrument. The policy and application together, therefore, constitute the written agreement of insurance; and in ascertaining the intention of the parties full effect must be given to the conditions, clauses, and stipulations contained in both instruments. Looking first into the application, we find no language which, by fair construction, was notice to the assured that in answering questions he was assuming, or was expected to assume, the strict obligations which the law attaches to a warranty. * * * But the difficulty in the case arises from the peculiar wording of the policy, considering the application as a part thereof. While the assured in one part of the written agreement is made to stipulate for a warranty, and in another the policy is declared to be void if the assured 'makes any erroneous representation, or omits to make known any fact material to the risk,' in still another part of the same agreement [the application] he covenants that, as to all material facts within his knowledge respecting the condition, situation, value, and risk of the property, he has made a full, just, and true exposition. If the purpose of the company was to secure a warranty of the correctness of each statement in the application, and if the court should adopt that construction of the contract, there could be no recovery on the policy if any one of these statements were proven to be untrue; and this although such statement may have been wholly immaterial to the risk and was made without any intent to mislead or defraud. Such a construction, according to established doctrine, might defeat the recovery, even if the overvaluation had been so slight as not to have influenced the company in accepting the risk. But if such was the purpose of the company, why did it not stop with the express declaration of a warranty? Why did it go further and incor-

porate into the policy a provision for its annulment in
the event the assured should make an 'erroneous repre-
sentation or omit to make known any fact material to
the risk'?   *   *   *   Still further, why did the company
make the application a part of the policy, and thereby
import into the contract the covenant of the assured,
not that he had stated every fact material to the risk, or
that his statements were literally true, but only that he
had made a just, true, and full exposition of all material
facts, so far as known to him?"   The court announced
the rule of construction in the syllabus as follows:
"When a policy contains contradictory provisions, or is
so framed as to render it doubtful whether the parties
intended that the exact truth of the applicant's state-
ments should be a condition precedent to any binding
contract, that construction which imposes upon the as-
sured the obligations of a warranty should not be fa-
vored.   The policy having been prepared by the insurers,
it should be construed most strongly against them."
This rule of construction was followed and reaffirmed
by the supreme court of the United States in *Moulor v.
American Life Ins. Co.*, 111 U. S., 335.

From the foregoing authorities we deduce the follow-
ing: (*a.*) A warranty in insurance law is the assertion
by the assured of some fact on the literal truth of which
the validity of the policy depends, without regard to the
materiality of such fact or the motive which prompted
the assertion.   (*b.*) A representation in insurance law is
also the assertion by the insured of some fact, but the
validity of the policy does not depend upon the literal
truth of the assertion.   (*c.*) The falsity of a representa-
tion is a defense to a suit on the policy only when made
of a fact material to the risk, and with a sinister motive.
(*d.*) Whether an assertion made by the insured of the ex-
istence of a fact is a warranty or representation is a
question of law.   (*e.*) Where an application for insurance
is made a part of the insurance policy, the two are to be
construed together for the purpose of ascertaining

whether the contracting parties intended that statements and assertions made by the insured should be regarded as warranties or representations. (f.) If a doubt exists whether a statement made is a warranty or representation, it will be held a representation. (g.) Warranties are not to be created nor extended by construction. (h.) In construing a contract for the purpose of determining whether the statements made therein were intended by the parties thereto to be warranties or representations, the court will take into consideration the situation of the parties, the subject-matter of the contract, the language employed, and will construe a statement made to be a warranty only when it clearly appears that such was the intention of the contracting parties; that the mind of each party consciously intended and consented that such should be the interpretation of his statements.

In the case at bar the application and the policy issued in pursuance thereof must be read and construed together; and since the application recites that every statement made therein by the assured is a warranty, and the policy provides that it should be void if the assured had concealed or misrepresented any material fact concerning the insurance, we conclude that, at least, a doubt exists as to whether the contracting parties intended that each statement made by the insured in his application should be a warranty, and accordingly hold that the statements made by the insured in his application were representations, and not warranties. If it had been the intention of the parties that every statement made by the insured in his application should be a warranty, then it was wholly unnecessary to provide in the policy that it should be void if the assured made any false representation as to a fact material to the insurance; because if the statements made in the application were warranties, then the policy was void unless each of said statements were literally true, no matter how immaterial they may have been.

11. Were the representations made by the assured in

his application untrue?  It was pleaded as a defense to this action that Simmons falsely overvalued the property insured.  This question was submitted by proper instructions to the jury and its finding for the insured must be taken as a finding in his favor that he had not falsely overvalued the insured property.  We have already quoted at length from the evidence and it must suffice to say that we think there is sufficient evidence in the record to sustain a special finding, had one been made, that the insured property at the time it was insured was of the value placed thereon by Simmons.  The evidence on behalf of the insurance company tends very strongly to show that this insured property was of less value than Simmons, at the time he made his application, represented it to be.  For instance, Simmons represented the value of his house to be $700, and the evidence of the insurance company tends to show that it was probably not worth over $300.  But assuming that the value placed by Simmons upon the insured property was an overvaluation, we would still be unable to reverse this judgment for that reason.  It has not been suggested by the insurance company in this case, either by pleading or evidence, that the overvaluation—if it was one—made by Simmons was intentionally made; nor made with the intention to deceive the insurance company; nor that the insurance company relied upon such valuation and was induced thereby to enter into the contract in suit.

*Fitch v. American Popular Life Ins. Co.*, 59 N. Y., 557, was a suit upon a life insurance contract.  This policy was based upon a written application therefor.  In the application the assured was asked the question if he had ever had any illness, local disease, or injury in any organ, to which he answered, "No."  The policy was defended upon the ground that this answer was false.  The evidence showed that the insured, six years before, had had inflammation of the eyes caused by sand thrown into them.  The New York court of appeals held that this evidence did not establish the defense; that the omission

to mention the injury was not conclusive evidence of fraud sufficient to avoid the policy, but at most was evidence to be submitted to the jury, and that in order to sustain the defense it was necessary for the insurance company to show not only that the statement was untrue, but that it was known to be untrue by the assured at the time made, and made with a fraudulent purpose.

*Franklin Fire Ins. Co. v. Vaughan*, 92 U. S., 516, was a suit upon a fire insurance policy. In his application for insurance the assured put a valuation of $12,000 upon his stock of goods. The action was defended on the ground that this was an overvaluation; that the goods were in fact not worth to exceed the sum of $6,000. The jury found the value of the insured property to be $7,857. In discussing the question as to whether this evidence and finding amounted to a defense to the policy the court said: "The value of the goods was to be estimated by the applicant. He gave this estimate at $12,000, and there is not the slightest evidence that such was not his honest estimate of their value. Insurance agents, as well as other persons, know with what partiality most men estimate their property, and how much more valuable they esteem it when their own than when it is their neighbor's. They do not object to this principle when the premiums are received for issuing policies. It is only when losses occur that they seek to apply the more rigid test of actual value. * * * The law exacts the utmost good faith in contracts of insurance, both on the part of the insured and the insurer, and a knowing and willful overvaluation of property by the insured, with a view and purpose of obtaining insurance thereon for a greater sum than could otherwise be obtained, is a fraud upon the insurance company that avoids the policy. It is a question of good faith and honest intention on the part of the insured, and though he may have put a value on his property greatly in excess of its cash value in the market, yet if he did so in the honest belief that the property was worth the valuation put upon it, and the excessive valuation was made

in good faith, and not intended to mislead or defraud
the insurance company, then such overvaluation is not a
fraudulent overvaluation that will defeat a recovery."

*First Nat. Bank of Kansas City v. Hartford Fire Ins. Co.*,
95 U. S., 673, was also a suit upon an insurance policy.
In that case the insured, in his application, placed a
valuation upon his building of $15,000 and upon his ma-
chinery of $15,000. One of the defenses was that this
was an overvaluation. The circuit court found that the
building was worth $8,000, and no more; and the ma-
chinery was worth $12,000, and no more. The court fur-
ther found that the representations as to value were
made without any intention on the part of the assured
to commit a fraud upon the insurance company. In dis-
cussing the question as to whether this overvaluation
was a defense to the action, the supreme court of the
United States said: "But his situation and duty were
wholly different when required to state the cash value of
his property. He was required to give its 'estimated
value.' His answers concerning such value were, in one
sense, and, perhaps, in every just sense, only the expres-
sion of an opinion. The ordinary test of the value of
property is the price it will command in the market if
offered for sale. But that test cannot, in the very nature
of the case, be applied at the time application is made
for insurance. Men may honestly differ about the value
of property, or as to what it will bring in the market;
and such differences are often very marked among those
whose special business it is to buy and sell property of
all kinds. The assured could do no more than estimate
such value; and that, it seems, was all that he was re-
quired to do in this case. His duty was to deal fairly
with the company in making such estimate. The special
finding shows that he discharged that duty and observed
good faith." The court summed up its conclusion upon
the question under consideration in the syllabus as fol-
lows: "When a party states in his application for an
insurance that he has made a just, full, and true expo-

sition of all material facts and circumstances in regard to the condition, situation, value, and risk of the property, so far as known to him, and the application is expressly made a part of the policy, should it afterwards appear that he overestimated the value of the property the policy would not be vitiated, unless it be shown that the estimate was intentionally excessive." The defense of overvaluation interposed to this action by the insurance company cannot be sustained, assuming that there was an overvaluation made by Simmons.

12. In the application made by Simmons for insurance he was asked these two questions:

"Q. State the actual amount paid for it—that is, the farm.

"A. Sixteen hundred dollars.

"Q. State terms of sale.

"A. Cash."

A final contention is that the answers of Simmons to these two questions were false. As to the first question and answer the evidence on behalf of Simmons tends to show the following: At the time he made application to the agent of the insurance company for this insurance the agent read the question in the application: "State the actual value paid for it." Simmons thereupon answered by saying that the consideration expressed in his deed was $1,600, and thereupon the insurance agent responded: "That is what goes," and wrote "sixteen hundred" in the application. As to the second question the evidence shows that Simmons did not pay cash for the land; that is, that he did not pay money for it. The consideration he paid for it was the transfer of a promissory note that he owned, some hay, and the assumption of a mortgage upon the land. We have already seen that these statements were not warranties. We have already seen that the insurance company has not pleaded nor attempted to prove that these statements were made with any sinister motive. In its answer the insurance company pleaded that these statements, in addition to being

false, were material to the risk. The jury was not required by any special finding to answer that question, and since the general finding of the jury is against the insurance company, we must presume that they considered the issues made by the pleadings as to whether these representations were false and as to whether they were material and resolved them against the insurance company. If the verdict of the jury is to be taken as a finding that the representations were true when made, then the evidence would probably not support that finding. If the verdict of the jury is to be taken as a finding that the representations made were not material to the risk, we think that finding is supported by the evidence. Indeed, we think no evidence was required to show that those questions and the answers to them were utterly immaterial. The farm—the land—was not the subject of the insurance contract about to be made, and in the application itself the assured was made to warrant the truth of his statements in regard to the insured property only,—the buildings and personalty. In *Campbell v. New England Mutual Life Ins. Co.*, 98 Mass., 381, already quoted, the court said: "The answers contained in the application being in the nature of representations only, the question is of their substantial and not of their literal truth. To defeat the policy they must be shown to be materially untrue or untrue in some particular material to the risk. * * * We understand it to be a question for the jury to determine, whether the facts which appear in evidence are so far inconsistent with the answers relied on in the application as to establish a material misrepresentation." To the same effect see *Houghton v. Manufacturers Mutual Fire Ins. Co.*, 8 Met. [Mass.], 114. In *Mulville v. Adams*, 19 Fed. Rep., 887, it was held that the materiality of a representation is a question of fact and that the test is the probable effect of the representation upon the judgment of the insurer. To the same effect see *Hardman v. Fireman's Ins. Co.*, 20 Fed. Rep., 594. In *Levie v. Metropolitan Life Ins. Co.*, 39 N. E. Rep. [Mass.], 792, it was held

that whether answers made by an assured in his application were false and made with an intent to deceive were questions of fact for the jury. We reach the conclusion, therefore, that in order that the answers under consideration—made by the assured—constitute a defense to this action, it was incumbent upon the insurance company to plead and prove not only that the answers were made as written in the application, but that they were false; that they were false in some particular material to the insurance risk; and that the insurance company relied and acted upon these answers. Since the pleading and the proof establish only that the answers were made and were false, the defense was not made out. The judgment of the district court is

AFFIRMED.