S. W. JACOBY, ADMINISTRATOR, APPELLEE, V. PRUDENTIAL INSURANCE COMPANY OF AMERICA, APPELLANT.

FILED OCTOBER 17, 1913.    No. 17,216.

1. Insurance: APPLICATION: FRAUD: REVIEW. Where the question as to the truth or falsity of the answers made by the assured in an application for a policy of life insurance are submitted to a jury upon conflicting evidence, and under proper instructions, and their finding is that the answers were not false or fraudulently made, the verdict will not be set aside, unless it is found to be clearly wrong.

2. Instructions examined, and found to be, as applied to the evidence, a fairly correct statement of the law.

APPEAL from the district court for Box Butte county: JAMES J. HARRINGTON, JUDGE. *Affirmed.*

*Eugene Burton* and *William Mitchell,* for appellant.

*B. F. Gilman, B. F. Swisher* and *Lloyd H. Brown,* contra.

BARNES, J.

Action on a policy insuring the life of Michael L. Jacoby for the sum of $2,000, brought by S. W. Jacoby, as administrator of the estate of the insured, against the Prudential Insurance Company of America. A trial to a jury in the district court for Box Butte county resulted in a verdict for the plaintiff, on which judgment was entered, and the defendant has appealed.

The petition was in the usual form, and the answer interposed two defenses: First, that the first premium for which the policy was issued was not paid; second, that the answers of the assured in the application for the policy, and on which it was based, were false and were fraudulently made; that they were warranties, without which the policy would not have been issued, and it was therefore void. It was also contended that, if the answers in question were not warranties, they were representations ma-

terial to the risk, which were relied on by the defendant, and without which the policy would not have been issued; that they were false, fraudulent and untrue, and therefore the policy was rendered void. The question of non-payment of the first premium seems to have been abandoned. It is not referred to in appellant's brief or argument, and therefore will not be considered in this opinion.

It appears that the policy in suit was issued on the 30th day of April, 1904, and by agreement was dated as the 2d day of February of that year. The application for the policy was made on the 25th day of April, 1904, and in the application one question put to the assured was: "Have you ever used malt or spirituous liquors to excess?" To this question the assured answered, "No." Then followed the question: "State the quantity you used each day of malt liquors, wines, spirits?" Answer, "None, none, none." To establish the falsity of the above answers, defendant produced several witnesses whose testimony tended to prove that the assured was addicted to the use of intoxicants, and it was claimed that when the assured died he had under his head an empty bottle which smelled of intoxicating liquor. It must be observed, however, that very few, if any, of the witnesses ever saw the assured drink any intoxicating liquor; but it seems to have been the opinion or impression of those witnesses that he had been frequently intoxicated. None of them could testify to more than twice when it was claimed by them that the assured was under the influence of intoxicating liquors. It may be conceded, however, and we think the testimony fairly establishes, that the assured was somewhat intoxicated on one occasion in October, 1903.

On the other hand, James Graham, in whose store the assured worked as a butcher or meat-cutter from November, 1903, to within two weeks of his death, testified, in substance, that Jacoby was employed by him at the time he signed the application for insurance, and had been in his employ for nearly six months; that Jacoby worked for

him continuously up to within two weeks of June 10, 1904; that during all of that time he never knew of Jacoby taking a drink.

Al Wiker, one of the defendant's witnesses, was night marshal at Alliance, Nebraska, from May, 1903, to June or July, 1904. He testified that during that time he saw Jacoby intoxicated once in the summer or fall of 1903, and once in 1904, but that he never saw him take a drink in his life.

Edwin O'Donnell, one of plaintiff's witnesses, testified that Michael L. Jacoby worked for him in his butcher-shop from December 6, 1902, until March 31, 1903; that he had occasion to observe Jacoby's habits, and that he was a temperate man; that the only time he ever saw him drink anything was occasionally on Saturday nights after he had finished work, between 11 and 12 o'clock, when he and Jacoby would drink a bottle of beer and eat a dish of oysters together; that on those occasions Jacoby never drank more than one bottle of beer; that he never laid off during the time he worked for this witness; that he never saw Jacoby drunk, although he saw him every day during that period of time.

John Leith, one of plaintiff's witnesses, testified that Jacoby worked for him on his farm from July to November, 1903, and that he did not drink while in his employ, or at any other time, as far as he knew; that he saw him nearly every time he went to town, and that he never saw him drunk or drinking any intoxicating liquor.

It appears from the testimony that little was known of the assured prior to about three years before his death, when he came to Alliance. It also appears from the testimony of the witnesses Graham, O'Donnell and Leith that from December, 1902, until the time of his death, with the exception of a short period in the summer of 1903, deceased was employed and worked steadily without losing any time, was absolutely and strictly a sober man, not addicted to the use of intoxicating liquors to any extent; and it must be observed that these men were in a position

to see and know Jacoby, and had every opportunity to observe and know his habits with reference to the use of intoxicating liquors. The witness Graham testified that the deceased did not drink at all while in his employ. It was during the time he was employed by Graham that he signed the application, and when he made answer to the question as to the quantity of malt, wine and spirits he used each day he truthfully answered, "None." The testimony of Graham was supported by the evidence of Henry Blumb, who worked with Graham while Jacoby was employed by Graham.

In addition to this testimony, Doctor L. W. Bowman, who was in the employ of the defendant insurance company as medical examiner, gave testimony touching upon the question of the truthfulness of Jacoby's answer to the question that he had never used malt or spirituous liquors to excess. In answer to questions asked Doctor Bowman, he testified that he made a thorough physical examination of Jacoby, and certified all statements in his report to be true; that his examination was made on April 25, two months before Jacoby died; that he had known Jacoby for two years; that he had no reason to suspect him of intemperate habits; that he found nothing wrong at all with his heart; that his nervous system was perfect, and he found no signs at all of excessive use of intoxicating liquors; that he found him free from all mental and physical defects, and in good health, and passed him as a first-class risk.

Considering this case in the light of the evidence, we are of opinion that the jury were justified in finding that the answers of the assured were not untrue, false or fraudulent.

Complaint is made of the third and fifth paragraphs of the instructions given by the trial court to the jury. By instruction No. 3, the jury were told, in substance, that the only questions presented for their consideration were: Did the deceased ever use wine or spirituous liquors to excess prior to the time of making the application for the

policy on which this action was brought? or did he use some quantity of either malt liquors, wines or spirits daily at the time of making said application? and if they found that the deceased prior to the time he made said application had used malt or spirituous liquors to excess, or some quantity each day of either malt liquors, wines or spirits, the plaintiff could not recover. But if the defendant had failed to establish all of those facts by a preponderance of the evidence, or if the evidence as to those facts should be equally balanced or preponderate in favor of the plaintiff, then their verdict should be for the plaintiff. By instruction No. 5, the jury were told that if they should find from the evidence that the deceased did not, prior to the time of making the application for insurance, use malt, wine or spirituous liquors to excess, and at the time he made said application he did not use any quantity each day of either malt liquors, wines or spirits, the fact that the deceased may have used either wines, malt or spirituous liquors, either daily or to excess after the policy was issued, would not relieve the defendant company from liability. We think these instructions could hardly be misunderstood. The question at issue seems to have been fairly submitted to the jury, and the appellant's criticisms of the instructions are not merited.

Therefore, following the rule announced in *Kettenbach v. Omaha Life Ass'n,* 49 Neb. 842, *Omaha Life Ass'n v. Kettenbach,* 55 Neb. 330, and *Ætna Ins. Co. v. Simmons.* 49 Neb. 811, the judgment of the district court is

AFFIRMED.

LETTON, ROSE and SEDGWICK, JJ., not sitting.